OPINION
{¶ 1} The defendant-appellant, Lois M. Hines ("Lois"), appeals the March 17, 2005 Judgment of conviction and sentence from the Court of Common Pleas of Marion County, Ohio.
 {¶ 2} Paul Hines ("Paul") was married to Dixie Wickham ("Dixie") in 1968 and divorced in 1972. In February of 1986, Paul and Lois met and began living together shortly thereafter. They were married on November 10, 1997. In July of 2004, Paul separated from Lois, who had been his wife for seven years. Paul subsequently moved out of their shared residence, re-established a relationship with Dixie, and moved into Dixie's residence.
 {¶ 3} In mid-September 2004, Lois contacted her longtime friend Delores Columbro ("Delores") and invited Delores to come to her home to discuss her recent marital separation. Delores agreed to spend a few days with Lois. On September 20, 2004, Delores drove from her home in Columbus to Lois' home in Marion County and stayed one night with her. During this visit, Lois confided in Delores about her plan to have Dixie Wickham murdered. According to Delores, Lois told Delores that she had someone who was going to take care of the matter and make it look like an accident. She explained that she expected it to be carried out on Thursday, September 23, 2004.
 {¶ 4} Delores returned home on September 21, 2004 and on September 22, 2004 she contacted an old friend, Elwood Vanover, a Madison County Deputy Sheriff, who contacted the Madison County Sheriff regarding his conversation with Delores concerning her conversations with Lois. The Madison County Sheriff then contacted the authorities in Marion County.
 {¶ 5} On September 22, 2004, officers of the Marion County Sheriff's Department met with Delores in Columbus at her home. She agreed to have a recording device hooked up to her phone to tape record her conversations with Lois. While the officers were present at her home, Delores made a tape-recorded phone call to Lois in which Lois confirmed her desire to have the murder carried out. At this point, neither Delores nor the officers knew who Lois planned on having carry out the murder. The officers wanted to direct Lois to an undercover officer in order to prevent Dixie from being murdered. Therefore, at the officer's request Delores agreed to continue tape recording her phone conversations with Lois.
 {¶ 6} Also, on September 22, 2004, the Marion County Sheriff's Department notified Dixie of the intended murder plot and provided security arrangements at her home for a few hours on September 23, 2004 due to the alleged threat. During the next several days, Lois and Delores continued to talk on the phone. On September 24, 2004, the two talked a few times and in their late night conversation, Delores expressed her concern about Lois wanting to get the job done. Lois responded that it was "just talk." Later in the conversation, Delores indicated that "I know a guy that can get it done for you" and added that one of her ex-husbands was Italian and had some "little town Mafia friends." On September 25, 2004, Lois called Delores and asked how much the person she knew would charge to murder Dixie. Delores informed Lois that she didn't have direct contact with the person but that she could notify her contact that Delores was interested in hiring the hit man, then that person could put the hit man in direct contact with Lois.
 {¶ 7} On September 27, 2004, Sgt. Michael Bammann ("Bammann"), a sergeant with the City of Mansfield Police Department assigned to the special OPS Unit, posed as a hit man and contacted Lois by phone. Lois and Bammann discussed a possible meeting time and arranged to speak the following morning. On September 28, 2004, Bammann called Lois and they agreed to meet in the Meijer store parking lot the following day at 11:45 a.m. On September 29, 2004, Lois met with Bammann in the parking lot of the Meijer store, paid him $1,000.00, and agreed to pay him an additional $1,000.00 once the murder was carried out.
 {¶ 8} At this meeting, Lois provided Bammann with Dixie's name, description, and living arrangements in writing and discussed when he could most effectively carry out the murder. They also discussed how she would like to hear about the murder, agreeing that Lois could read about it in the paper and that he would contact her at a later point for the final payment. Once the meeting was over, Bammann requested that he leave the parking lot first and then a few minutes later she could leave. Shortly after his departure from their meeting, surveillance officers arrested Lois.
 {¶ 9} On October 21, 2004, Lois was indicted by the Grand Jury of Marion County, Ohio, on one count of conspiracy to commit murder, pursuant to R.C. 2923.01, a felony of the first degree. Lois was found guilty of this charge following a jury trial on February 14-16, 2005. On March 17, 2005, the trial court entered its Judgment Entry of Sentencing and sentenced Lois to a term of eight years in prison.
 {¶ 10} On April 15, 2005, Lois filed her Notice of Appeal alleging seven assignments of error.
 First Assignment of Error THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'SMOTION FOR CONTINUANCE
 {¶ 11} It is well established that the decision whether to grant or deny a continuance lies within the broad, sound discretion of the trial court. State v. Jones (2001),91 Ohio St.3d 335, 342, 744 N.E.2d 1163, citing State v. Unger (1981),67 Ohio St.2d 65, 67, 423 N.E.2d 1078. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion. Id. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140; State v. Adams (1980),62 Ohio St.2d 151, 157-58, 404 N.E.2d 144, 149.
 {¶ 12} The standard of review relative to a decision on a motion for continuance is stated in Burton v. Burton (1999),132 Ohio App.3d 473, 725 N.E.2d 359 citing State v. Unger
(1981), 67 Ohio St.2d 65, 423 N.E.2d 1078. In Burton, we stated:
The review of a decision on a motion for a continuancerequires the appellate court to apply a balancing test, weighingthe trial court's interest in controlling its own docket,including facilitating the efficient dispensation of justice,versus the potential prejudice to the moving party. There areobjective factors that a court must consider in determiningwhether to grant a continuance. These factors include the lengthof the delay requested; whether previous continuances have beengranted; the inconvenience to the parties, witnesses, attorneysand the court; whether the request is reasonable or purposefuland contrived to merely delay the proceedings; and whether themovant contributed to the circumstances giving rise to therequest. State v. Unger (1981), 67 Ohio St.2d 65, 67-68,423 N.E.2d 1078.
 {¶ 13} Because the record in Burton failed to demonstrate whether the trial court considered any of the Unger factors, we found the denial of a continuance to be an abuse of discretion. Moreover, in that case, we noted that the facts should have put the trial court on notice that defendant may have been abandoned by counsel that she presumed was representing her, yet the court did not conduct a hearing on the issue.
 {¶ 14} However, the case at hand is distinguishable fromBurton. Here, the trial was commenced on February 14, 2005, four and a half months after Lois had been arrested. Her counsel had been representing her since her arrest and her counsel agreed in early November of 2004 with the trial date being set for February 14, 2005. Her counsel confirmed the acceptability of the February 14, 2005 trial date at a November 30, 2004 pretrial.
 {¶ 15} On January 26, 2005, Lois' counsel filed a motion to continue the trial date of February 14, 2005, ostensibly because he had another case scheduled for trial in February and a murder trial for March 4. However, the other February jury trial which her counsel noted in his motion was not scheduled to commence until eight days after the start of this case. Subsequently, on January 28, 2005, the prosecutor's office filed a response to the state's memorandum in opposition to the motion for continuance. On February 1, 2005, Lois' counsel filed a response to the prosecutor's memorandum in opposition to motion for continuance.
 {¶ 16} In the state's memorandum in opposition to motion for continuance, the state pointed out that at the November 30 pretrial, the prosecutor advised the court and Lois' counsel that it was imperative that the case not be continued because the intended victim was fearful that there was nothing to stop Lois from carrying out the execution of the murder plot which she had originally planned. In addition, one of the state's critical witnesses, Delores was a seventy-three year old woman who experienced significant anxiety while the case remained pending.
 {¶ 17} In response to the state's memorandum Lois argued that she posed no danger to the witnesses and further claimed that she had not been provided with discovery or a bill of particulars in this case. In response the prosecutor stated that it never received a request for discovery or a bill of particulars but had since provided such information and in fact, had provided all discoverable documents and records including the tapes involved in the case by October 8, 2004.
 {¶ 18} On February 4, 2005, the trial court summarily overruled the motion to continue. Though it would be better practice for the trial court to provide its reasoning in a judgment entry ruling on a motion for continuance, under the circumstances evidenced from the record, we cannot find that the trial court abused its discretion when it denied Lois' request for a continuance. As noted above, the trial court had three memorandums to consider with respect to the motion to continue the trial date with supporting facts all bearing upon the factors that the trial court must consider in making a ruling on a motion for continuance. See Burton, supra. Accordingly, Lois' first assignment of error is overruled.
 Second Assignment of Error THE TRIAL COURT ERRED IN ALLOWING THE ALLEGED VICTIM TO BEPRESENT THROUGHOUT THE ENTIRE PROCEEDINGS
 {¶ 19} A victim has a constitutional and statutory right to be present during the trial unless the court determines that exclusion of the victim is necessary to protect the defendant's right to a fair trial. Ohio Constitution Article I, Section10(a); R.C. 2930.09. The Ohio Constitution in Article I, Section10(A), specifically provides victims constitutional rights to "reasonable and appropriate notice, information, access, and protection and to a meaningful role in the criminal justice process." The Ohio Legislature recognized that it is difficult to have a meaningful role in the criminal justice process if the victim is banished from the courtroom; therefore, R.C. 2930.09
was enacted. It provides:
A victim in a case may be present whenever the defendant * * *in the case is present during any stage of the case against thedefendant * * * that is conducted on the record, other than agrand jury proceeding, unless the court determines that exclusionof the victim is necessary to protect the defendant's * * * rightto a fair trial * * *.
Furthermore, Evid.R. 615 makes clear that even when there is a separation of witnesses, the victim has the right to be present in accordance with the criminal statutes. Specifically, Evid.R. 615(B)(4) states:
(B) This rule does not authorize exclusion of any of thefollowing persons from the hearing:
* * *
(4) in a criminal proceeding, a victim of the charged offenseto the extent that the victim's presence is authorized by statuteenacted by the General Assembly.
 {¶ 20} On February 11, 2005, the State filed a motion to allow the victim, Dixie Wickham, to be present during the trial. Lois' counsel filed no response but objected at trial on the basis that he believed it was unfair to allow the victim to hear other witnesses testify. However, Lois' counsel made no specific showing that Lois' right to a fair trial would be jeopardized. Therefore, the trial court sustained the motion for the victim to be present at trial. As a result, Dixie was permitted to hear the testimony of other witnesses.
 {¶ 21} Lois now argues that the presence of the victim, Dixie, precluded her right to a fair trial. However, in this case, Dixie was a minor witness because she was not even aware of the murder for hire plot until she was alerted by the Marion County Sheriff's Department. Dixie's testimony did confirm various factual details which included the location of her residence, the type of car she drove, her relationship with Paul, the sequence of events that occurred once she was notified by the Marion County Sheriff's Department, and that she had never met Delores before. However, the vast majority of her testimony merely reiterated the testimony that Sgt. Bammann, the undercover police officer who posed as a hit man, provided.
 {¶ 22} In sum, Dixie had a constitutional and statutory right to be present at trial. Moreover, Evid.R. 615 specifically provides that the court does not have to exclude her unless Lois' right to a fair trial would be compromised. Lois has not demonstrated that her right to a fair trial was compromised in any way, and a review of the record does not reveal unfairness. Therefore, the trial court did not abuse its discretion when it allowed the victim, Dixie, to remain in the courtroom. Accordingly, Lois' second assignment of error is overruled.
 Third Assignment of Error THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FORMISTRIAL AFTER APPELLEE HAD INQUIRED OF APPELLANT AND RECEIVEDANSWERS PERTAINING TO HER PRIOR ASSOCIATION WITH FELONS
 {¶ 23} A trial court is vested with broad discretion to order a mistrial. Arizona v. Washington (1978), 434 U.S. 497, 509-10,98 S.Ct. 824, 54 L.Ed.2d 717. Thus, the trial court's decision under such circumstances is to be afforded great deference. Id.
Because the decision to grant or deny a motion for mistrial rests within the sound discretion of the trial court, the standard of review we must apply is abuse of discretion. Koch v. Reist
(2000), 89 Ohio St.3d 250, 251, 730 N.E.2d 963. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 24} In the present case, the trial court did not abuse its discretion when it denied Lois' motion for mistrial. Specifically, there was no information which was improperly presented to the jury. During cross examination of Lois, the prosecution asked the following questions:
Q: Would you agree that giving the hit man her description,her address, what car she drove, her work schedule, would helpfacilitate him in committing the offense of Murder?
 A: I was telling him what I thought he wanted to hear. Ididn't want him to know there was anything wrong. I was afraid ofhim. Can't you understand that, that I was scared to death? I'venever seen anybody like that. I had never dealt with anybody likethat. I was scared.
 Q: Well, when you say "you haven't ever dealt with anybodylike that", I mean, that's really not the case. I mean, you'vedealt with numerous convicted felons throughout your life, haveyou not? February 14-16, Tr. 431.
Lois' counsel objected and the jury was excused while counsel argued about the admissibility of the question. The prosecution argued that Lois had "opened the door" on this issue when she testified that she had never dealt with "anybody like that" when she was asked about dealing with a hit man when in fact she had lived on prison grounds with her husband for years and the prisoners had worked on her yard. Furthermore, the prosecution argued that the testimony was admissible because two of her children and three of her grandchildren had served time in prison and she had visited them.
 {¶ 25} On the other hand, Lois' counsel argued that it was improper impeachment in cross examination to indicate that Lois knew felons. Upon listening to the arguments, the trial court ruled that the prosecution could cross examine Lois regarding her prior association with prison inmates while living on the prison grounds and regarding her knowledge of the criminal record of her grandson, Robert Baker ("Robert"). However, the trial court did not allow the prosecution to cross examine Lois regarding her association with other family members who were convicted felons.
 {¶ 26} In sum, there was no information that was provided to the jury that was ruled inadmissible; objections were sustained to any later questions that were outside the scope of the trial court's ruling; and the jury was instructed to disregard any such questions. Therefore, the trial court did not abuse its discretion when it denied Lois' motion for mistrial. Accordingly, Lois' third assignment of error is overruled.
 Fourth Assignment of Error THE TRIAL COURT ERRED BY ALLOWING APPELLANT TO BE QUESTIONEDCONCERNING THE CRIMINAL RECORD OF HER GRANDSON-IN-LAW, WHO DIDNOT TESTIFY
 {¶ 27} In a related argument, Lois claims that she was significantly prejudiced by the trial court's decision to permit testimony to be elicited from her regarding the criminal record of a non-witness, her grandson Robert Baker ("Robert").
 {¶ 28} Evid.R. 401 defines "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid.R. 402 provides "[a]ll relevant evidence is admissible * * *. Evidence which is not relevant is not admissible." Evid.R. 403(A) requires that evidence which is nonetheless relevant be excluded where "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 29} The trial court is vested with sound discretion to rule on the admission or exclusion of evidence based on relevance, and these rulings will not be overturned absent an abuse of discretion. Renfro v. Black (1990), 52 Ohio St.3d 27556 N.E.2d 150. The term "abuse of discretion" connotes more than error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 30} The record in this case establishes that Lois told Delores during taped conversations that she had arranged for her grandson, Robert, to murder Dixie; however, he had allegedly not carried out the murder because Dixie's son was home when he went to Dixie's residence and later a transportation problem prevented him from following through with the murder. In addition, Lois told Sgt. Bammann that she had "begged and begged Robert to do it." At trial, Lois acknowledged that Robert was the person referred to on the tape, but denied ever having any conversations with him about killing Dixie.
 {¶ 31} The trial court did not err in allowing Lois to be questioned concerning the criminal record of Robert because the fact that Lois knew that Robert was a convicted felon was relevant and made it more likely she would approach someone to carry out a murder who she knew had previously engaged in serious criminal conduct. The testimony concerning Robert was limited to Lois' knowledge that he was a convicted felon who had been recently released from prison, without getting into the specifics of what crimes he had been convicted of or her relationship with Robert.
 {¶ 32} Under these circumstances, the trial court did not err by allowing Lois to be questioned about Robert's criminal record. Accordingly, Lois' fourth assignment of error is overruled.
 Fifth Assignment of Error APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
 {¶ 33} In Lois' fifth assignment of error, she claims that trial counsel was ineffective on multiple fronts. Specifically, she argues that as a result of her trial counsel allowing potential jurors to make statements during voir dire which were prejudicial to Lois, counsel's failure to object on numerous occasions, and counsel's failure to make a Rule 29 motion for acquittal, Lois was deprived of a fair trial.
 {¶ 34} In order to prevail on a claim of ineffective assistance of counsel, Lois must establish both of the following:
1. Trial counsel made errors so serious he was no longerfunctioning as counsel in the manner guaranteed by the SixthAmendment; and
 2. There is the reasonable probability that were it not fortrial counsel's errors, the results of the trial would have beendifferent.
See Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. Thus, under this standard, Lois must show that her counsel's performance fell below an objective standard of reasonable representation and that prejudice arose from that deficient performance. State v. Bradley (1989), 42 Ohio St.3d 136, 142,538 N.E.2d 373.
 {¶ 35} Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. State v. Malone (Dec. 13, 1989), Montgomery App. No. 10564, 1989 WL 150798. "Ineffective assistance does not exist merely because counsel failed `to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it." Id. quoting Smith v.Murray (1986), 477 U.S. 527, 106 S.Ct. 2661.
 {¶ 36} Lois raises four issues claiming ineffective assistance of counsel. First, Lois' trial counsel allowed two jurors to temporarily remain on the panel and make statements even though the State agreed to remove them. One juror stated "I do" when asked whether she might have difficulty being fair and impartial if called to serve. Lois' counsel indicated he wanted the opportunity to inquire further; thereafter, the juror explained that nine years ago, her husband's ex-wife was convicted of the same charge. Lois' counsel then stated that he did not object to her being removed. Another juror stated:
I know the victim, and the more I think about it I don't thinkI could be fair or impartial. She will be up on the stand andgiving testimony, and the Defendant will be up on the standgiving testimony. To me that's gonna make a decision for me tomake sure which one's lying and which one's telling the truth.
Lois' counsel requested to inquire further and the juror indicated that she had a two year degree in criminology, worked for the Delaware County Probation Department, that she knew Dixie when the juror was a bartender and that she knew Paul and Trudy Hines but wasn't sure whether they were Lois' or Dixie's children. Lois counsel then stated that he did not object to her being removed.
 {¶ 37} Second, Lois' counsel failed to object to statements made by Dixie relating to whether she knew Delores, had heard of her before, and when she had first met her. Third, Lois' counsel failed to object to how the incident affected Dixie during her testimony. Fourth, Lois' counsel failed to make a Rule 29 motion for acquittal at the conclusion of the State's case.
 {¶ 38} Upon review, it is our conclusion that the evidence in this case regarding the claims of ineffective assistance of counsel revealed tactical or strategic trial decisions. As such, they do not fall below an objective standard of reasonable representation. Nor, in this case, did they create any reasonable probability of a different outcome. Moreover, tactical or strategic trial decisions, even if ultimately unsuccessful, will not substantiate a claim of ineffective assistance of counsel.State v. Garrett (1991), 76 Ohio App.3d 57, 61,600 N.E.2d 1130. Accordingly, Lois' fifth assignment of error is overruled.
 Sixth Assignment of Error THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THEEVIDENCE
 {¶ 39} Lois was convicted of conspiracy to commit murder in violation of R.C. 2923.01(A)(2), which required the state to prove the following elements:
1. The defendant had purpose to promote or facilitate theoffense of murder;
 2. The defendant agreed with another person that one or moreof them would engage in conduct that facilitated the murder;
 3. The defendant committed a substantial overt act infurtherance of the conspiracy.
When reviewing whether a verdict is against the manifest weight of the evidence, the appellate court must review the entire record, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. In contrast, in State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
[A]n appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence admitted at trial and determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. * * * [T]he relevantinquiry * * * [is whether,] after viewing the evidence in lightmost favorable to the prosecution, any reasonable trier of factcould have found the essential elements of the crime provenbeyond a reasonable doubt.
 {¶ 40} In this case, Sgt. Bammann called Lois on September 27, 2004, while posing as a hit man. Lois told Sgt. Bammann that she wanted him to kill a woman and she would pay him to do it. A tape recorded phone conversation contained the following communication:
Bammann: What do you want me to do?
 Lois: I want a woman killed.
* * *
Bammann: No doubt you want this woman killed?
 Lois: No doubt in my mind. I have begged and begged Robert todo it.
On September 28, 2004, Sgt. Bammann called Lois a second time and she confirmed that she still wanted him to kill Dixie and that they would meet the next day in the Meijer's parking lot. On September 29, 2004, Sgt. Bammann met Lois in the parking lot and she paid him $1,000 and agreed to pay him an additional $1,000 after he carried out the murder. Lois also provided him in writing a description of Dixie and her address. She also provided him verbally with Dixie's work schedule and the best time to catch her alone. Also, during the meeting at Meijer's, Lois made the following statements to Sgt. Bammann which indicated her intentions:
Lois: Hell, yes, I want her dead.
* * *
Lois: If you meet her face to face, I want you to tell her Ihad it done. I want her to know it was me.
Furthermore, Lois had ten separate phone conversations with Delores between the dates of September 22 and September 27, 2004, in which Lois indicated her desire and intention to have Dixie killed, all of which were tape recorded and introduced into evidence at trial.
 {¶ 41} In State v. Martin (1980), 62 Ohio St.2d 250,405 N.E.2d 267, the Ohio Supreme Court held that a person is guilty of conspiracy in violation of R.C. 2923.01(A) when "he plans the commission of the crime with another and does a substantial overt act in furtherance of the conspiracy, even though the other person feigns agreement and at no time intends to go through with the plan."
 {¶ 42} In addition, Lois argues that her conviction should be reversed on the basis of entrapment. The Ohio Supreme Court defined the defense of entrapment in State v. Doran (1983),5 Ohio St.3d 187, 449 N.E.2d 1295 as the following:
The defense of entrapment is established where the criminaldesign originates with the officials of the government, and theyimplant in the mind of an innocent person the disposition tocommit the alleged offense and induce its commission in order toprosecute.
 {¶ 43} In this case, Lois first told Delores about her plan to kill Dixie on Monday, September 20, 2004. Lois advised Delores that she had already made arrangements with someone who would kill Dixie and that the murder was supposed to have taken place but that he hadn't carried it out. On September 22, 2004, Delores notified law enforcement regarding her conversation with Lois. On the following days, Delores agreed with the Marion County Sheriff's Department that she would tape her conversations with Lois. During these conversations, Delores advised Lois that she couldn't get Lois off of her mind, that she had been thinking of Lois all morning, and that she kept thinking about what Lois had said. Also, during these conversations, Lois continued to discuss the murder plan and acknowledged that it was Robert who she had originally made arrangements with to kill Dixie. During various conversations she gave further information about the efforts she had made to have Robert carry out the murder:
Lois: He keeps saying, I'm going to do it. I am going to doit. I keep saying when. He keeps dragging his feet.
 Lois: He was going to make it look like an accident. He wentout to do it twice. One time she was gone. One time her son wasthere.
 Lois: I have begged and begged Robert to do it.
 {¶ 44} In sum, in reviewing the totality of the evidence, we cannot conclude that the jury clearly lost its way or created a manifest miscarriage of justice. Also, after viewing the entire record and the evidence in the light most favorable to the State, we are not willing to say that a rationale trier of fact could not find each and every element of the offense proven beyond a reasonable doubt. Finally, the defense of entrapment was not established in this case. Accordingly, the sixth assignment of error is overruled.
 Seventh Assignment of Error THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION WHEN ITFAILED TO FOLLOW THE STATUTORY SENTENCING CRITERIA RESULTING INAPPELLANT RECEIVING A SENTENCE WHICH WAS EXCESSIVE,DISPROPORTIONATE AND CONTRARY TO LAW
 {¶ 45} Lois argues that the sentence of eight years in prison imposed by the trial court was excessive because the trial court failed to apply the sentencing statutes in making its judgment.
 {¶ 46} In reviewing the sentencing decision of a trial court, an appellate court must "review the factual findings of the trial court under R.C. 2929.08(G)'s `clear and convincing' standard."State v. Martin (1999), 136 Ohio App.3d 355, 361,736 N.E.2d 907. Thus, a sentence imposed by the trial court will not be disturbed absent a showing by clear and convincing evidence that the trial court committed one of the errors described by R.C.2953.08(G): the sentence is unsupported by the record; the procedure of the sentencing statutes was not followed or there was not a sufficient basis for the imposition of a prison term; or that the sentence is contrary to law.
 {¶ 47} In determining what sentences to impose upon a defendant, a trial court is "granted broad discretion in determining the most effective way to uphold" the two overriding purposes of felony sentencing: "to protect the public from future crimes and punish the offender." State v. Avery (1998),126 Ohio App.3d 36, 50, 709 N.E.2d 875. However, trial courts are required "to make various findings before properly imposing a felony sentence." State v. Alberty (Mar. 28, 2000), 3rd
Dist. No. 1-99-84, 2000-Ohio-1671. In fact, the trial court's findings under R.C. 2929.03, 2929.04, 2929.11, 2929.12, 2929.14, and 2929.19, in effect, determine a particular sentence, and a sentence unsupported by these findings is both incomplete and invalid. See Martin, 136 Ohio App.2d at 361. Furthermore, an appellate court should not simply substitute its judgment for that of the trial court, as the trial court is "clearly in the better position to judge the defendant's dangerousness and to ascertain the effect of the crimes on the victims." State v.Jones (2001), 93 Ohio St.3d 391, 400, 754 N.E.2d 1252.
 {¶ 48} Pursuant to R.C. 2929.13(D), a felony of the first degree carries a presumption in favor of a prison term. Lois was given an eight year prison sentence which was not the maximum prison sentence; therefore, R.C. 2929.14(B) provides the following:
[I]f the court imposing a sentence upon an offender for afelony elects or is required to impose a prison term on theoffender, the court shall impose the shortest prison termauthorized for the offense . . ., unless one or more of thefollowing applies:
 (1) * * *
 (2) The court finds on the record that the shortest prisonterm will demean the seriousness of the offender's conduct orwill not adequately protect the public from future crime by theoffender or others.
 {¶ 49} Lois was convicted of conspiracy to commit murder, a felony in the first degree, which carries a maximum prison term of ten years. Prior to the sentencing hearing on March 16, 2005, both parties submitted sentencing memoranda. Lois' counsel requested that the court place Lois on community control sanctions and the State recommended a prison sentence of nine years. The trial court imposed a sentence of eight years in prison.
 {¶ 50} After Lois had been convicted at trial, the case was referred to the Adult Probation Department for a pre-sentence investigation. At the time of the sentencing hearing, the trial court indicated that it had reviewed the pre-sentence investigation report, the sentencing memorandum filed by the State, the sentencing memorandum filed by Lois' counsel, a victim impact statement, and a number of letters from family members of Lois. Also, the Trial Judge discussed and compared the sentencing in this case with other similar cases. Then the following finding was made by the Trial Judge:
I'm gonna have to find that the minimum term would demean theseriousness of the offense and not adequately protect thepublic.
 {¶ 51} In making the sentencing, we find the trial court properly considered the seriousness and the recidivism factors set forth in R.C. 2929.12 and the purposes and principles of felony sentencing set forth in R.C. 2929.11. Furthermore, the trial court made the necessary finding under R.C. 2929.14(B)(2) permitting the imposition of a longer prison term. Accordingly, the seventh assignment of error is overruled.
 {¶ 52} Based on the foregoing analysis, the seven assignments of error are overruled, and the judgment of the Court of Common Pleas of Marion County is affirmed.
Judgment Affirmed.
 Bryant, J., concurs
 Rogers, J., concurs separately.