OPINION
{¶ 1} Defendant-Appellant David A. Columber, II ("Columber") appeals from the January 18, 2006 judgment of the Marion Municipal Court, Marion County, Ohio, finding him guilty of Operating a Vehicle under the Influence of Alcohol ("OVI"), in violation of Ohio Revised Code Section 4511.19(A)(1)(d) and guilty of Speeding, in violation of R.C. Section 4511.21.
 {¶ 2} These charges stem from events occurring on May 1, 2005 on SR 423 in Marion County, Ohio. Columber was stopped at approximately 2:40 a.m. by Officer Carpenter ("Carpenter") of the Ohio State Highway Patrol for operating his motor vehicle in excess of the posted speed limit. When Carpenter approached Columber's vehicle, Carpenter noticed a strong odor of alcohol coming from Columber and noticed that his eyes were bloodshot and glassy. After conducting field sobriety tests, Carpenter placed Columber under arrest for OVI and transported him to the Ohio State Highway Patrol Post in Marion. At the post, Carpenter administered a breath test on Columber which returned a result of .089.
 {¶ 3} Columber was charged with OVI in violation of R.C.4511.19(A)(1)(a) and (A)(1)(d), and with Speeding, in violation of R.C. 4511.21. On May 3, 2005 Columber entered a plea of Not Guilty to the offenses of OVI and Speeding. On July 8, 2005 Columber filed a Motion to Suppress Evidence and Dismiss.
 {¶ 4} Columber's Motion to Suppress came before the court for an evidentiary hearing on July 14, 2005, and on September 22, 2005 the court denied Columber's Motion to Suppress. Prior to trial, the State of Ohio ("State") dismissed the charge filed under R.C. 4511.19(A)(1)(a). At the bench trial held on January 18, 2006 Officer Carpenter testified on behalf of the State and Dr. Alfred Staubus ("Staubus") testified as an expert witness on behalf of Columber. The videotape of Columber's traffic stop was also admitted into evidence. At the close of the evidence, the court found Columber guilty of one count of OVI in violation of R.C. 4511.19(A)(1)(d), and one count of Speeding.
 {¶ 5} The court sentenced Columber to thirty (30) days in jail and a fine of $1,000 on the OVI charge, but suspended twenty-seven (27) days of jail time and $600 of the fine on the condition that Columber abide by the laws of the State of Ohio and that he complete a court-approved Jail Alternate Program and any counseling ordered. The court also suspended Columber's driver's license for six months beginning on January 18, 2006 with credit for 90 days already served on the administrative license suspension from the date of the incident. The court sentenced Columber to a $70 fine for the Speeding violation.
 {¶ 6} Columber now appeals, asserting two assignments of error.
 ASSIGNMENT OF ERROR NO. 1 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY PROHIBITINGDEFENDANT-APPELLANT'S EXPERT WITNESS FROM TESTIFYING ON MATTERSGOING TO THE WEIGHT THAT SHOULD BE GIVEN THE BAC TEST RESULT.
 {¶ 7} In his first assignment of error, Columber asserts that the trial court abused its discretion in not allowing Staubus to offer testimony as to the weight that should be given the BAC test result.
 {¶ 8} The trial court is vested with sound discretion to rule on the admission or exclusion of evidence based upon relevance, and these rulings will not be overturned absent an abuse of discretion. State v. Hines 3rd Dist. No. 9-05-13,2005-Ohio-6696 citing Renfro v. Black (1990), 52 Ohio St.3d 27,556 N.E.2d 150. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court.Id.
 {¶ 9} In the present case, the State filed a Motion in Limine prior to trial to exclude those portions of the expert testimony of defense witness Staubus relating to the general accuracy and reliability of the BAC Data master. The court ruled that Columber had a right to present a defense regarding his intoxication and would allow evidence regarding his conduct on the night of the incident. However, the court deferred ruling on the issues concerning Staubus and instead permitted the State to object at the time of Staubus' testimony at trial.
 {¶ 10} At trial, upon calling Staubus as a witness, defense counsel attempted to elicit testimony regarding an expert panel used by the Ohio Department of Health to draft the rules and procedures for alcohol and drug testing. The State objected to this testimony on the basis of relevance. Defense counsel responded that they were simply attempting to bring forth testimony concerning the procedures for calibrating intoxilyzers. The State argued that one may not use expert testimony to attack the general reliability of intoxilyzers, but did not object to defense counsel discussing the procedures used in Columber's specific test.
 {¶ 11} The court sustained the State's objection. The court allowed Staubus to testify as to the recognized biological variance of .02 among individuals in breath to alcohol testing procedures. However, Staubus was only permitted to proffer testimony regarding department regulations concerning the BAC Data master test in Ohio, and regarding the procedures recommended by science to account for the biological variance. Furthermore, Staubus was only allowed to proffer his opinion regarding the use of a dual testing method with intoxilyzers.
 {¶ 12} Columber argues that Staubus' testimony was to be offered as to the weight that should be given the test result, not the admissibility or reliability of the test itself, and directs this court to State v. Vega (1984), 12 Ohio St.3d 185,465 N.E.2d 1303. Although Vega held that "defense expert testimony as to testing procedures going to weight rather than admissibility is allowed," Id. at 189, we find Columber's reliance on Vega to be misplaced.
 {¶ 13} In Vega, the Ohio Supreme Court also held that "an accused may not make a general attack upon the reliability and validity of the breath testing instrument." Id. at 190. We find that Staubus' proffered testimony regarding his preference of using the dual testing procedure to test Columber's breath amounted to an attack upon the reliability of the testing procedures approved by the Director of the Ohio Department of Health.
 {¶ 14} The regulation of specific scientific requirements for testing and maintaining equipment for alcohol analysis has been securely vested in those with the scientific expertise to advise on such matters. State v. Ferrato, 11th Dist. No. 2005-P-0070, 2006-Ohio-3219. Specific regulations regarding the operation of the simulator and Data master are also areas of scientific expertise. State v. Brandt, 5th Dist. No. 2002AP020008, 2002-Ohio-5474. Therefore, the Ohio legislature has delegated to the Director of the Department of Health, not the courts, the discretionary authority to determine which tests and procedures are generally reliable and thus admissible in a prosecution under R.C. 4511.19. State v. Luke 10th Dist. No. 05AP-371, 2006-Ohio-2306.
 {¶ 15} In accord with these principles, courts have held that though a defendant may not mount a challenge to the general accuracy and reliability of the breath testing machine in question, he "may endeavor to show something went wrong with his test and that, as a consequence, the result was at variance with what the approved testing process should have produced." Statev. Luke, supra.
 {¶ 16} In the instant case, the record reflects Staubus' acknowledgment on cross-examination that he had little knowledge of the specifics of Columber's test, that he did not recall Columber's approximate weight and size, and that he did not know what, if anything, Columber had to eat the night of the incident. Therefore, we find that the evidence offered by Staubus had nothing to do with the weight to be given to Columber's specific test, and instead acted as a general attack upon the reliability and validity of the breath testing instrument.
 {¶ 17} Furthermore, the Ohio Supreme Court has addressed the necessity for addressing and challenging the admissibility of the chemical test results through a pretrial motion and specifically held as follows:
A defendant charged under R.C. 4511.19(A)(1) through (4) whodoes not challenge the admissibility of the chemical test resultsthrough a pretrial motion to suppress waives the requirement onthe state to lay a foundation for the admissibility of the testresults at trial. The chemical test result is admissible at trialwithout the state's demonstrating that . . . the bodily substancewas analyzed in accordance with methods approved by the Directorof Health, and . . . was conducted by a qualified individualholding a permit issued by the Director of Health.
 State v. French (1995), 72 Ohio St.3d 446, 650 N.E.2d 887, paragraph one of the syllabus.
 {¶ 18} We note that Columber's pretrial Motion to Suppress failed to challenge the functioning of the intoxilyzer used in the instant case. Additionally, we note that Columber's Motion to Suppress also did not address the qualifications of Officer Carpenter in testing and calibrating the machine prior to Columber's test, the administration of the test in compliance with the Ohio Department of Health regulations or the Ohio Revised Code, or the admissibility of the breath test itself.
 {¶ 19} Therefore, based upon Columber's failure to address the admissibility of the intoxilyzer text in his Motion to Suppress, our finding that Staubus' proffered testimony was offered only to attack the general reliability of the testing procedure, and the foregoing case law, we find that the trial court did not act unreasonably, arbitrarily, or unconscionably so as to abuse its discretion by not allowing Stauber to testify as to using a dual sample testing procedure that is not recognized by the Director of Health. Accordingly, Columber's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 2 THE CONVICTION FOR OPERATING A VEHICLE UNDER THE INFLUENCE OFALCOHOL WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 20} In his second assignment of error, Columber argues that the trial court's verdict was against the manifest weight of the evidence and should be reversed.
 {¶ 21} In reviewing whether the trial court judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. Statev. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Andrews 3rd Dist. No. 1-05-70, 2006-Ohio-3764, citing State v.Martin (1983) 20 Ohio App.3d 172, 485 N.E.2d 717; Thompkins,78 Ohio St.3d at 387, 678 N.E.2d 541.
 {¶ 22} In making this determination, the Ohio Supreme Court has outlined eight factors for consideration, which include "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary." State v. Apanovitch
(1987), 33 Ohio St.3d 19, 23-24, 514 N.E.2d 394, citing State v.Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926, syllabus. Ultimately, however, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin,20 Ohio App.3d at 175, 485 N.E.2d 717.
 {¶ 23} In the present case, we find that there were no conflicts in the evidence presented to the trial court, and that the weight of the evidence supports the trial court's conviction for OVI under R.C. 4511.19(A)(1)(d). This section of the Ohio Revised Code provides:
(A)(1) No person shall operate any vehicle, streetcar, ortrackless trolley within this state, if, at the time of theoperation, any of the following apply:
 (d) The person has a concentration of eight-hundredths of onegram or more but less than seventeen-hundredths of one gram byweight of alcohol per two hundred ten liters of the person'sbreath.
 {¶ 24} At trial the State presented the testimony of Officer Carpenter who testified that he observed Columber traveling southbound on SR 423 in excess of the posted speed limit. Carpenter testified that he used his radar unit to confirm that Columber was traveling at 51 mph in a 40 mph zone, and then initiated a traffic stop of Columber.
 {¶ 25} Carpenter testified that upon his initial contact with Columber, he noticed a strong odor of alcoholic beverage coming from Columber and noticed that his eyes were bloodshot and glassy. Carpenter testified that he asked Columber to come back to the patrol car and asked Columber how much he had to drink, to which Columber responded that he had consumed three or four beers between 8 p.m. and 1:30 a.m. Carpenter testified that he next asked Columber to recite the alphabet, but Columber was unable to successfully complete this task. Carpenter testified that he then administered the Horizontal Gaze Nystagmus ("HGN") test upon Columber, during which Carpenter observed all six indicators of impairment.
 {¶ 26} Carpenter also testified that he administered field sobriety tests to Columber. Carpenter testified that during the walk and turn test Columber started walking with his left foot first, contrary to Carpenter's instructions, and also spun around instead of taking a short turn to the left and was slightly off balance. Additionally, Carpenter testified that during the one-legged stance test Columber put his foot down twice and counted incorrectly. Finally, Carpenter testified that once he had placed Columber under arrest for OVI and transported him to the Ohio State Highway Patrol Post in Marion, he administered a breath test on Columber which returned a result of .089, in violation R.C. 4511.19(A)(1)(d).
 {¶ 27} Columber did not offer any evidence at trial to contradict the testimony of Officer Carpenter. Furthermore, we note that Columber's argument in support of his second assignment of error largely consists of contentions that the evidence may not have been sufficient to prove that Columber was even under the influence of alcohol at the time of his arrest. We find that Columber's arguments to this effect are without merit as Columber was convicted under R.C. 4511.19(A)(1)(d) for having aprohibited concentration of alcohol in his system while operating his motor vehicle, not under R.C. 4511.19(A)(1)(a) which only requires that the person be under the influence of alcohol while operating a motor vehicle.
 {¶ 28} Furthermore, we note that the language of R.C.4511.19(A)(1) clearly indicates a purpose to impose strict liability because the overall design of the statute is to protect against hazards to life, limb and property created by drivers who have consumed so much alcohol that their faculties are impaired.State v. Culver 2nd Dist. No. 2004-CA-14, 2005-Ohio-1359
citing State v. Moine (1991), 72 Ohio App.3d 584,595 N.E.2d 524. The act of driving a vehicle while under the influence of alcohol . . . is a voluntary act . . . and the duty to refrain from doing so is one that in the interests of public safety must be enforced by strict criminal liability without the necessity of proving a culpable state of mind. Id.
 {¶ 29} Additionally, we note that Columber failed to introduce any evidence at trial to establish that he did not have the prohibited concentration of alcohol in his system in violation of R.C. 4511.19(A)(1)(d). Specifically, we find that Columber did not introduce any testimony as to the amount of alcohol he consumed the evening of his arrest, that he did not introduce any evidence to show that the breathalyzer machine on which his breath was tested was not functioning properly, or and that he did not introduce any evidence to demonstrate that the breath test result was not analyzed correctly.
 {¶ 30} Based upon the foregoing, we cannot find that the trial court clearly lost its way and created such a manifest miscarriage of justice that Columber's conviction must be reversed. Accordingly, Columber's second assignment of error is overruled.
Judgment affirmed.
 Bryant, P.J., and Cupp, J., concur.