[Cite as *State v. Mongeau*, 2012-Ohio-5230.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO.  13-12-21

    v.

MICHAEL J. MONGEAU,               **O P I N I O N**

    DEFENDANT-APPELLANT.


Appeal from Tiffin Municipal Court
Trial Court No. TRC 1200006B

Judgment Affirmed

Date of Decision:  November 13, 2012


APPEARANCES:

    *James M. Ruhlen*  for Appellant

    *Drew E. Wood*  for Appellee

Case No. 13-12-21

**SHAW, P.J.**

{¶1} Defendant-appellant Michael Mongeau ("Mongeau") appeals the April 3, 2012, judgment of the Tiffin Municipal Court in Seneca County, Ohio, sentencing him to thirty days in jail[1] upon finding Mongeau guilty of OVI in violation of R.C. 4511.19(A)(1)(D), a misdemeanor of the first degree, and failure to drive in Marked Lanes in violation of R.C. 4511.33(A), a minor misdemeanor. For the reasons that follow, we affirm the judgment of the Tiffin Municipal Court.

{¶2} On December 30, 2011, Mongeau was stopped at approximately 11:30 p.m. by Deputy Christopher Potter ("Deputy Potter") of the Seneca County Sheriff's Office. While following Mongeau, Deputy Potter observed Mongeau drift left of center twice and drift right across the white fog line. (Mar. 8, 2012, Tr. at 13-14). Then, as Mongeau went around a curve, Deputy Potter observed Mongeau drift so close to the guardrail Potter thought Mongeau was going to hit the guardrail. (*Id.*) Deputy Potter then initiated a traffic stop. (*Id.*)

{¶3} When Deputy Potter approached the vehicle he observed a person he would identify as Mongeau driving, that there was another female in the front of the truck and that three people were in the back of the truck. (*Id.* at 14). Deputy Potter detected "an extremely strong odor of an intoxicating beverage coming from the vehicle." (*Id.*) Deputy Potter noted that initially Mongeau would not

---

[1] All thirty days were conditionally suspended.

look at him and answered him mostly with one word answers such as "yes" or "no." (Tr. at 15). According to Deputy Potter, the longer Mongeau spoke the more slurred his speech became. (*Id.*) Due to the traffic violations, the odor of an intoxicating beverage and the slurred speech, Deputy Potter asked Mongeau to step out of the vehicle. (*Id.*)

{¶4} Mongeau originally denied drinking, but eventually during questioning Mongeau stated that he had "three" and had stopped drinking at around 7 p.m. (*Id.* at 16). Deputy Potter attempted to give Mongeau the HGN test but Mongeau would not follow the stimuli so the test was terminated. (Tr. at 18). Deputy Potter noticed that Mongeau's eyes were red-bloodshot. (Tr. at 16). No further field sobriety tests were performed because Mongeau stated due to back surgery he was unable to perform the walk and turn test and the one leg stand test. (*Id.* at 19). Deputy Potter then asked Mongeau if Mongeau would be willing to submit to a breath test. (*Id.*) Mongeau responded by saying that he would be "a hair above or a hair below." (*Id.*)

{¶5} Mongeau was then placed under arrest for OVI and transported back to the Seneca County Sheriff's Office. (*Id.* at 20). There Mongeau submitted to a breath test. The Sherriff's Office had both a DataMaster and an Intoxilyzer available for testing, but Deputy Potter chose to test Mongeau on the DataMaster.

Mongeau's blood alcohol content registered as a .127 on the DataMaster. (*Id.* at 22).

{¶6} Subsequently Mongeau was charged with OVI in violation of R.C. 4511.19(A)(1)(D) and failure to drive in Marked Lanes in violation of R.C. 4511.33(A). Mongeau pled not guilty to the charges.

{¶7} On February 1, 2011, Mongeau filed a "Motion to Suppress, Dismiss and *In Limine*." (Doc. 18). The Motion sought, *inter alia*, to suppress evidence of the DataMaster test due to the fact that the "testing protocol consisted of only a single breath test with no concurrent calibration checks" thus denying Mongeau "due process of law and equal protection of the law in violation of the Fifth and Fourteenth Amendments to the United States Constitution as well as parallel provision[s] of the Ohio Constitution." (*Id.*)

{¶8} On March 8, 2012, a hearing was held on the Motion to Suppress. The State called Deputy Potter who testified to the events as described above and then the State rested.

{¶9} Mongeau called Dr. Albert Staubus. Dr. Staubus testified that he was familiar with the DataMaster and that he had taken training on it. (*Id.* at 42). Dr. Staubus testified that "dual testing" to duplicate results would be better practice for the DataMaster. (*Id.* at 44). Dr. Staubus also testified that the new Intoxilyzer 8000 uses "dual testing" procedures. (*Id.* at 46). However, Dr. Staubus admitted

that there had been no changes to DataMaster policy, and that the current regulations do not require dual testing. (*Id*. at 54-58). Dr. Staubus did not testify to any particular irregularity in Mongeau's test.

{¶10} Both the State and Mongeau submitted their closing arguments via briefs. (Doc. 45); (Doc. 44). On March 30, 2012, the court overruled Mongeau's Motion to Suppress, finding that Dr. Staubus had no knowledge of Mongeau's individual test and that Staubus sought to show that the general testing procedure related to the DataMaster was flawed. (Doc. 48). The trial court found this was an "impermissible attack on the devise [sic]" under *State v. Vega*, 12 Ohio St.3d 185 (1984). (*Id*.)

{¶11} After the motion to suppress was overruled, Mongeau changed his plea to "no contest." (Apr. 3, 2012 Tr. at 6). Mongeau's plea was accepted and Mongeau was found guilty. (*Id*.) Ultimately Mongeau was sentenced to thirty days in the Seneca County Jail with all thirty days suspended provided Mongeau comply with the terms and conditions of probation. (Doc. 51). In addition, Mongeau was placed on non-reporting probation for one year, ordered to complete an approved Driver Intervention Program, and his license was suspended for six months. (*Id*.) A judgment entry reflecting this sentence was filed that same day on April 3, 2012.

{¶12} It is from this judgment that Mongeau appeals, asserting the following assignment of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING APPELLANT'S MOTION TO SUPPRESS THE RESULT OF APPELLANT'S BREATH TEST IN VIOLATION OF DEFENDANT'S DUE PROCESS AND EQUAL PROTECTION RIGHTS GUARANTEED BY THE FIFTH AND THE FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS PARALLEL PROVISIONS OF THE OHIO CONSTITUTION.**

{¶13} In his assignment of error Mongeau argues that the court erred by overruling Mongeau's Motion to Suppress. Specifically, Mongeau argues that the breath-testing procedure of the DataMaster is flawed and because of this Mongeau was denied his right to Due Process. In addition, Mongeau argues that his right to due process was violated by Deputy Potter electing to test Mongeau on the DataMaster rather than the Intoxilyzer.

{¶14} "Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact." *State v. Dudli*, 3d Dist. No. 3-05-13, 2006-Ohio-601, ¶ 12, citing *United States v. Martinez*, 949 F.2d 1117, 1119 (11th Cir.1992). The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson*, 137 Ohio App.3d 847, 850 (12th Dist.2000). Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must

accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100. The appellate court must then review the application of the law to the facts *de novo*. *Id*., citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶15} The applicable law on the Department of Health's protocol on the DataMaster is set forth in *State v. Vega*, 12 Ohio St.3d 185 (1984). In *Vega* the Supreme Court of Ohio held "an accused may not make a general attack upon the reliability and validity of the breath testing instrument." *Vega* at 190. Further, "an accused is not denied his constitutional right to present a defense nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the reliability of intoxilyzers in general." *Id*. at 186.

{¶16} The Ohio Revised Code "clearly vests all authority relative to determining the techniques and methods of chemically analyzing the alcohol content in a person's blood, urine and breath for purposes of R.C. 4511.19, in the director of health." *State v. Miller*, (Dec. 15, 1998), Marion App. No. 9-98-42, unreported, at 6, 1998 WL 876812. R.C. 3701.143 reads,

> **[T]he director of health shall determine or cause to be determined, techniques or methods for chemically analyzing a person's blood, urine, breath, or other bodily substance in order to ascertain the amount of alcohol * * * in the person's blood, urine, breath or other bodily substance.**

{¶17} While the Department of Health is granted authority to determine the techniques and methods for testing, the Department of Health may not abuse its discretion. *State v. Sebach*, 5th Dist. No 97 CA 24, 1998 WL 751902. An abuse of discretion has been defined as unreasonable, arbitrary or unconscionable act. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶18} In this case, Mongeau argues that the DataMaster testing procedure is flawed and therefore using the DataMaster to test his blood-alcohol content violated his right to Due Process. Mongeau contends that the single breath test required for the DataMaster is not sufficiently scientifically reliable. To support this contention, Mongeau points to the testimony of Dr. Staubus from the suppression hearing, wherein Staubus contended that a dual testing procedure would be more scientifically reliable.

{¶19} We have found this identical argument—made by this identical expert witness—to be a general attack on the DataMaster machine's reliability, and therefore an impermissible attack under *Vega*, *supra*. *State v. Columber*, 3d Dist. No. 09-06-05, 2006-Ohio-5490, ¶ 13 ("We find that Staubus' proffered testimony regarding his preference of using the dual testing procedure to test Columber's breath amounted to an attack upon the reliability of the testing procedures approved by the Director of the Ohio Department of Health.").

{¶20} Furthermore, the Tenth District Court of Appeals has also found this attack to be invalid under *Vega*. In *State v. Sabo*, 10th Dist. No. 04AP-1114, 2006-Ohio-1521, like our own prior case in *Columber*, and in the case before us, Dr. Staubus testified that a dual-testing procedure would be more reliable and that a single test is not sufficiently reliable. The Tenth District held, "[i]n essence, argument and testimony that the 'basic testing procedure' is flawed in 'every case' and that a single test is never scientifically reliable is an attack on the general reliability of the testing procedure, not an attack on a specific test. The trial court properly concluded that such a challenge is precluded by *Vega*." *Sabo*, 2006-Ohio-1521, ¶ 23.

{¶21} According to caselaw and our own analysis, Mongeau's attack is an attack on the general reliability of the testing procedure and therefore is an invalid attack under *Vega*, *supra*. There was no testimony by Dr. Staubus or by anyone else of any irregularities in Mongeau's test. Thus the trial court did not err by overruling Mongeau's Motion to Suppress on this issue.

{¶22} Mongeau next argues that his Due Process rights were violated by Deputy Potter's decision to test Mongeau on the DataMaster rather than the Intoxilyzer 8000. Despite Mongeau's arguments, both machines are approved for testing blood-alcohol content, and the regulations do not require use of one over

the other if both are available. Ohio Adm.Code 3701-53-02(A). Therefore, Mongeau's argument is without merit.

{¶23} Finally, Mongeau argues that defendants are not prohibited from challenging the weight of breath test evidence. Weight of evidence and credibility of witnesses are issues for the trier of fact. *State v. DeHaas*, 10 Ohio St.2d 230 (1967). At trial, defense expert testimony is permissible if the testimony addresses weight rather than admissibility. *Vega*, 12 Ohio St.3d at 189. Here we have already held Mongeau was challenging the general reliability of the tests and their admissibility. Therefore, his argument is precluded under *Vega* and the motion to suppress was not improperly granted. Accordingly, Mongeau's assignment of error is overruled.

{¶24} For the foregoing reasons Mongeau's assignment of error is overruled and the judgment of the Tiffin Municipal Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**