[Cite as *State v. George*, 2013-Ohio-2511.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :
                                        :
        Plaintiff-Appellee,             :
                                        :        Case No. 12CA3351
        v.                              :
                                        :        DECISION AND
CHRISTOPHER T. GEORGE,                  :        JUDGMENT ENTRY
                                        :
        Defendant-Appellant.            :        Released: 6/14/13

_____

APPEARANCES:

Timothy Young, Ohio Public Defender, and Jessica S. McDonald, Assistant Ohio Public Defender, Chillicothe, Ohio, for Appellant.

Sherri K. Rutherford, Law Director, Chillicothe, Ohio and Pamela C. Wells, Assistant City Law Director, Chillicothe, Ohio for Appellee.

_____

Hoover, J.

{¶ 1}  The Chillicothe Municipal Court found appellant, Christopher T. George, guilty of Operating a Vehicle under the Influence of Alcohol ("OVI"), a violation of R.C. 4511.19(A)(1)(a).  Appellant initially entered a plea of not guilty and filed a motion to suppress. The motion to suppress was filed on the basis that the officer did not have the required reasonable and articulable suspicion to stop appellant's vehicle.  The trial court denied appellant's motion.  Appellant changed his plea to no contest; and the trial court found him guilty of the OVI.  Appellant timely filed his appeal of the trial court's judgment.  For the following reasons, the judgment of the trial court is affirmed.

{¶ 2}  Appellant, Christopher T. George raises the following assignment of error:

THE COURT BELOW ERRED WHEN IT OVERRULED THE DEFENDANT-
APPELLANT'S MOTION TO SUPPRESS BECAUSE THE STATE FAILED

TO SHOW, UNDER THE TOTALITY OF THE CIRCUMSTANCES, THAT THE POLICE HAD REASONABLE AND ARTICULABLE SUSPICION OF CRIMINAL ACTIVITY WHEN THEY STOPPED THE DEFENDANT-APPELLANT'S VEHICLE BASED SOLELY ON INFORMATION RECEIVED FROM A CITIZEN INFORMANT'S TIP.

I. FACTS

{¶ 3}  On May 24, 2012, appellant was cited for an OVI, in violation of R.C. 4511.19(A)(1)(a).  Appellant entered a plea of not guilty at his arraignment. Appellant then filed a motion to suppress all the evidence which was acquired from the stop and subsequent arrest.  A hearing on the motion to suppress was held on September 4, 2012.

{¶ 4}  Ayasha Alcorn, Mitchell Gardner, and Officer Matthew Howell testified for the State of Ohio at the motion to suppress hearing.  Alcorn testified that on May 24, 2012, she picked up her fiancé Mitchell Gardner from his place of employment and began to take him home.  Shortly thereafter, she noticed a car directly behind her.  The driver of the vehicle was honking the horn repeatedly, yelling, and flashing the car's lights.  As she proceeded down the road, the driver pulled beside her on the passenger side and continued yelling at her, threatening her, and driving erratically.  Alcorn then followed the car into a parking lot in order to obtain its license plate number.  While Alcorn was attempting to exit the lot and turn back out onto the main road, she was held up by traffic.  The other driver again pulled up behind her while she was waiting for the traffic to clear.  Two men exited the vehicle and approached her car.  At that point Alcorn headed back on the main road; and Gardner called 911.

{¶ 5}  When Gardner called 911, he told the police dispatcher that the driver of a blue Ford Focus hatchback with after-market blue headlights on the hood was driving erratically,

swerving, and threatening them. Gardner also identified the license plate number of the car. He described the driver as fairly tall with dark hair. Due to the car being on the right side of Gardner when it was pulled beside them, he could not specifically describe the passenger. The dispatcher asked the couple to stop nearby and speak to a police officer.

{¶ 6} Meanwhile, Officer Matthew Howell heard the dispatcher relay that someone was being run off the road by a dark colored Ford Focus with blue headlights. Officers in the vicinity were headed to the reported location. Officer Howell was traveling north when he spotted a car matching the description heading southbound. According to Officer Howell, he could see that the occupants of the vehicle were two white males, also matching the description given by dispatch. The headlights on the vehicle were "very distinctive" to Officer Howell as well.

{¶ 7} He turned his police cruiser around and pursued the car. As the car pulled into a "Speedy Mart," Officer Howell pulled up behind it and watched appellant step out. Another police officer in an unmarked vehicle pulled up and began to question the appellant's passenger. Other police officers in the area proceeded north to make contact with the victims. After initiating contact with the appellant, Officer Howell radioed the officers that had interviewed Alcorn and Gardner to confirm that he had located the vehicle in question.

{¶ 8} Officer Howell proceeded to ask appellant about the night and his actions earlier. Appellant answered that he had just come from the area in question; but he denied having any involvement in the incidents reported by dispatch. After further investigation, Officer Howell charged appellant with the OVI.

{¶ 9} After hearing testimony of the witnesses, the trial court denied appellant's motion to suppress. Thereafter, he changed his plea to no contest and the trial court found him guilty of OVI. This appeal was timely filed on October 29, 2012.

## II. ANALYSIS

{¶ 10}  Appellant argues Officer Howell did not possess the constitutionally required reasonable and articulable suspicion needed to perform the investigative stop.  Appellant also contends that the reliability of each of the citizen informants, Gardner and Alcorn, is questionable.  The State argues that based upon the totality of the circumstances Officer Howell appropriately relied on the 911 dispatch and subsequent information to stop appellant's vehicle.  The appellant's sole assignment of error states that the trial court erred when it overruled his motion to suppress.

### A. Standard of Review

{¶ 11}  Our review of a trial court's decision on a motion to suppress presents a mixed question of law and fact.  *State v. Jones,* 4th Dist. No.11CA13, 2012-Ohio-1523 ¶ 6 citing, *State v. Roberts*, 850 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 10 and *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.  When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility.  *Id.*  Accordingly, we defer to the trial court's findings of fact if they are supported by competent credible evidence.  *Id.* citing *State v. Landrum*, 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (2000).  Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case.  *Id.* citing *Roberts* at ¶ 100; *Burnside* at ¶ 8.

### B. Investigative Stop

{¶ 12}  The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right of the people to be free from unreasonable searches

and seizures.  *See State v. Orr,* 91 Ohio St.3d 389, 391, 2001-Ohio-50, 745 N.E.2d 1036.  These two provisions contain nearly identical language and the Supreme Court of Ohio has interpreted them as affording the same level of protection.  *Id.*  "Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the State to establish that the warrantless search or seizure was constitutionally permissible."  *State v. Hansard*, 4th Dist. No. 07CA3177, 2008–Ohio–3349, at ¶ 14, citing *Maumee v. Weisner*, 87 Ohio St.3d 295, 297, 1999–Ohio–68, 720 N.E.2d 507 and *Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1988), at paragraph two of the syllabus.

{¶ 13}  All parties agree that the stop at issue in this case is an investigative stop subject to Fourth Amendment jurisprudence.  The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop and briefly detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot."  *State v. Abernathy,* 4th Dist. No. 07CA3160, 2008-Ohio-2949 ¶22-24, quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *see also United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct 573, 145 L.Ed.2d 570 (2000); *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991); *State v. Venham*, 96 Ohio App.3d 649, 654, 645 N.E.2d 831, 833 (1994).

{¶ 14}  A valid investigative stop must be based upon more than a mere "hunch" that criminal activity is afoot.  *See e.g.*, *Arvizu* at 273; *Wardlow* at 124; *Terry* at 27.  Reviewing courts should not, however, "demand scientific certainty" from law enforcement officers.  *Wardlow* at 125.  Rather, a reasonable suspicion determination "must be based on commonsense judgments and inferences about human behavior."  *Id.*  Thus, "the likelihood of criminal activity

need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizui* at 274*; Wardlow* at 123.

{¶ 15} A court that is determining whether a law enforcement officer possessed reasonable suspicion to stop an individual must examine the "totality of the circumstances." *See e.g.*, *Arvizu* at 273. The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Thus, when a court reviews an officer's reasonable suspicion determination, a court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers. *Id.*

{¶ 16} An informant's tip may provide officers with the reasonable suspicion necessary to conduct an investigative stop. *Abernathy*, 4th Dist No. 07CA3160, 2008-Ohio-2949 at ¶ 26. Where the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. *Maumee*, 87 Ohio St.3d 295, 1999-Ohio-68, 720 N.E.2d 507 at 299. The appropriate analysis then is whether the tip itself has sufficient indicia of reliability to justify the investigative stop. *Id.* Factors considered "highly relevant in determining the value of the [informant's] report" are the informant's veracity, reliability, and basis of knowledge. *Id.* (Citations omitted).

{¶ 17} In the case *sub judice*, the information leading to the stop of appellant came from Gardner. Courts have generally classified informants into three groups: the anonymous informant, the known informant, and the identified citizen informant. *Maumee* at 300. Gardner cannot be classified as anonymous or a known informant ("someone from the criminal world

who has provided previous reliable tips") given the circumstances of his report to police.  *Id.* Therefore, for purposes of constitutional analysis, Gardner is an "identified citizen informant" in this case. The trial court concluded that Gardner's tip was both credible and reliable.  The trial court also found that sufficient facts existed to create reasonable suspicion for Officer Howell to stop appellant's vehicle.

{¶ 18}  In *Maumee* the Ohio Supreme Court further explained:

While the United States Supreme Court discourages conclusory analysis based solely upon these categories, insisting instead upon a totality of the circumstances review, it has acknowledged their relevance to an informant's reliability.  The court has observed, for example, that an anonymous informant is comparatively unreliable and his tip, therefore, will generally require independent police corroboration. *Alabama v. White,* [496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).] The court has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: "[I]f an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary *." Illinois v. Gates,* [462 U.S. 213, 233–234, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).]

{¶ 19}  It is clear from the record that neither Alcorn nor Gardner spoke directly to the arresting Officer Howell.  However, an officer may rely upon information collectively known to the law enforcement officers involved in the search or investigation.  *State v. Kelley*, 4th Dist. No. 10CA3182, 2011-Ohio-3545, ¶ 26.  *See also*, *State v. Cook*, 65 Ohio St.3d 516, 521, 605

N.E.2d 70. "An officer need not have knowledge of all of the facts necessary to justify [a search], as long as the law enforcement body as a whole possesses such facts and the detaining officer reasonably relies upon those who possess the facts." *Cook* at 521. Thus, for example, "[a] radio broadcast may provide the impetus for an investigatory stop, even when the officer making the stop lacks all of the information justifying the stop." *Id.* The Ohio Supreme Court has therefore described the relevant Fourth Amendment inquiry as "whether the law-enforcement community as a whole complied with the Fourth Amendment; the entire system is required to possess facts justifying the stop or arrest, even though the arresting officer does not have those facts." *Id.*

{¶ 20} Appellant argues that Gardner provided insufficient information to justify Officer Howell's stop. Appellant cites to *State v. Ramsey*, 10th Dist. Nos. 89AP-1298 & 89AP-1299, 1990 WL 135867 (Sept. 20, 1990) as a factually similar case, wherein the Tenth District Court of Appeals reversed a trial court's denial of a motion to suppress based upon an improper investigatory stop. In *Ramsey*, the arresting officer received a radio dispatch that described in great detail the vehicle operated by a possible drunk driver. A private citizen had called the Sheriff's Dispatcher with the information. She left her name and phone number when she called. A vehicle matching the description was sighted by police officers; and the car was observed for a quarter of a mile. The officers did not observe any traffic violations; but when they pulled the car over, in a mobile home driveway, they believed that the defendant was intoxicated. The defendant was arrested for drunk driving and other outstanding tickets.

{¶ 21} The Tenth District Court of Appeals reversed the denial of defendant's motion to suppress because "the tip has no more reliability than an anonymous phone tip. The informant provided no basis for her knowledge, nor did she demonstrate any special familiarity with

defendant's affairs." *Id.* at 5. The court found no indication in the record that the police even attempted to verify the caller's identity or that any indication existed that the informant could actually be identified in the future if the report turned out to be maliciously made. *Id.*

{¶ 22} This case is distinguishable from *Ramsey* because of the nature of the informant. Gardner provided an eyewitness account of a car driving erratically that threatened Alcorn and him. He also provided police a description of the car including distinctive aftermarket headlights and a license plate number. Gardner and Alcorn then met with a police officer face to face to confirm the information, which the arresting officer Howell received via radio relay. In contrast, the Tenth District Court of Appeals considered the informant in *Ramsey* to be practically anonymous. *Id.* at 5-6. Here, concerned for the safety of Alcorn and himself, Gardner reported the car to police as an eyewitness account. Clearly, Gardner falls under the category of a known citizen informant. Therefore, Gardner is more reliable than the informant described in *Ramsey* and rigorous scrutiny of the basis of his knowledge is unnecessary. *Gates*, 462 U.S. at 234.

{¶ 23} We agree with the trial court that Gardner's tip was credible and reliable. The crucial inquiry is to Gardner's "veracity, reliability, and basis of knowledge," since his tip is the basis for the reasonable suspicion. *Maumee*, 87 Ohio St.3d 295, 1999-Ohio-68, 720 N.E.2d 507 at 299. As noted before, Gardner is a highly reliable individual, providing a specific description of the vehicle he witnessed driving erratically. Gardner was concerned for the safety of Alcorn and himself. He not only provided details; but he also communicated in person with a police officer that established communication with Officer Howell to confirm further details of the vehicle and driver. We find under the totality of the circumstances that Gardner's tip provided reasonable suspicion for Officer Howell to conduct an investigatory stop on appellant. The State

has met their burden of establishing the stop's constitutionality.  Accordingly appellant's sole

assignment of error is not well taken.

{¶ 24}  The judgment of the Chillicothe Municipal Court is affirmed.

JUDGMENT AFFIRMED

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and Abele, J.:  Concur in Judgment and Opinion.

For the Court

By:_____

Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.