[Cite as *State v. Shoaf*, 2022-Ohio-3605.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,            CASE NO.  5-21-21

      v.

ANNA MAE SHOAF,                   O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO.  5-21-22

      v.

ANNA MAE SHOAF,                   O P I N I O N

      DEFENDANT-APPELLANT.

**Appeals from Findlay Municipal Court**
**Trial Court Nos. 20TRC04154 and 20CRB01177**

**Judgments Affirmed**

**Date of Decision:  October 11, 2022**

APPEARANCES:

    *Adam H. Houser* **for Appellant**

    *Elliott T. Worth*  **for Appellee**

**SHAW, J.**

{¶1} In this consolidated appeal, defendant-appellant, Anna M. Shoaf ("Shoaf"), appeals from her convictions in the Findlay Municipal Court.

*Facts and Procedural History*

{¶2} On August 23, 2020, Shoaf was ticketed for operating a vehicle while under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a), a first-degree misdemeanor, leaving the scene of an accident (hit-skip) in violation of R.C. 4549.02, a first-degree misdemeanor, and driving between marked lanes in violation of R.C. 4511.33, a minor misdemeanor. The traffic ticket complaints were filed in Case No. 20TRC04154 (Hancock App. No. 5-21-21). Case No. 20CRB01177 (Hancock App. No. 5-21-22) concerns a complaint charging Shoaf with endangering children in violation of R.C. 2919.22(C)(1), a first-degree misdemeanor. The charges arose from an alleged car accident occurring on Interstate 75. Shoaf's vehicle allegedly side-swiped another vehicle, but did not stop.

{¶3} Shoaf pled not guilty to the charges. Prior to trial, Shoaf filed the same motion to suppress evidence in each case. A suppression hearing proceeded in regard to the legality of the stop of her vehicle. At the conclusion of the testimony, the trial court denied the motions, finding reasonable, articulable suspicion more

than sufficient to justify the stop of Shoaf's vehicle to investigate the alleged hit-skip accident.

{¶4} The cases proceeded to a one-day jury trial. At the conclusion of the trial, Shoaf was found guilty by the jury on all charges, except that Shoaf's determination of guilt of the marked lane violation was by the trial court.

{¶5} Following a sentencing hearing, the trial court sentenced Shoaf, inter alia, to 90 days in jail, with all days suspended, for the leaving the scene of an accident conviction; 180 days in jail, with 110 days suspended and 5 days' credit for successful completion of a driver intervention program, plus 60 days' credit for successful post-sentence home arrest, for the OVI conviction; and 90 days in jail, with 85 days suspended, for the endangering children conviction, to be served consecutively. The trial court also fined Shoaf for each offense of which she was convicted, plus costs. Additionally, the trial court placed Shoaf on probation for a period of two years in each case, with reconsideration after one-year.

{¶6} Shoaf now appeals, raising the following assignments of error for our review.

### ASSIGNMENT OF ERROR NO. 1

**IT WAS AGAINST MANIFEST WEIGHT OF EVIDENCE FOR THE TRIAL COURT TO DEN[Y] APPELLANT'S MOTION TO SUPPRESS.**

**ASSIGNMENT OF ERROR NO. 2**

**THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE.**

**ASSIGNMENT OF ERROR NO. 3**

**THE TRIAL COURT MADE REVERSABLE [SIC] ERROR WHEN IT DENIED APPELLANT'S MOTION FOR A MISTRIAL.**

**ASSIGNMENT OF ERROR NO. 4**

**THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT THE TRIAL LEVEL.**

*First Assignment of Error*

**{¶7}** In her first assignment of error, Shoaf challenges the trial court's ruling on her motion to suppress contending that it was against the manifest weight of the evidence when the totality of the circumstances is considered. She argues that two witnesses for the defense, herself and her daughter, testified that there was no accident or vehicle collision, and that the only information the police had was based upon the phone call of the alleged victim. She also argues that none of the police saw any of the alleged traffic violations that lead to the traffic stop, that the only photograph of Shoaf's vehicle shows no damages to the vehicle, and that there was also no debris found on the highway where the accident took place.

Standard of Review

{¶8} As we recently stated in *State v. Henson*, 3d Dist. Marion No. 9-19-75, 2020-Ohio-4019, ¶ 17:

> **"Appellate review of a decision on a motion to suppress presents a mixed question of law and fact."** ***State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.* citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). When reviewing a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.* citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997).**

Law and Analysis

{¶9} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops." *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 11. Generally, " 'the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.' " *Id.,* quoting *Whren v. United States*, 517 U.S. 806, 810 (1996). However, as noted by the Ohio Supreme Court:

> **Probable cause is certainly a complete justification for a traffic stop, but we have not held that probable cause is required. Probable cause is a stricter standard than reasonable and**

**articulable suspicion.** ***State v. Evans*, 67 Ohio St.3d 405, 411 (1993). The former subsumes the latter. Just as a fact proven beyond a reasonable doubt has by necessity been proven by a preponderance, an officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop.**

*State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 23.

**{¶10}** An officer only needs a reasonable articulable suspicion that a driver may have committed a traffic offense in order to justify an investigative stop. *See State v. Gartrell*, 3d Dist. Marion No. 9-14-02, 2014-Ohio-5203, ¶ 52. As this Court has noted:

> **"The Supreme Court of Ohio has defined 'reasonable articulable suspicion' as 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion [upon an individual's freedom of movement].'"** ***State v. Shaffer*, 3d Dist. Paulding No. 11-13-02, 2013-Ohio-3581, ¶ 18, quoting *Bobo* at 178. "In determining whether reasonable articulable suspicion exists, a reviewing court must look to the totality of the circumstances."** ***Steinbrunner* at ¶ 14, citing *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). "Under this analysis, a court should consider 'both the content of the information possessed by police and its degree of reliability.'"** ***Id.,* quoting *City of Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999).**

*Gartrell* at ¶ 53.

**{¶11}** As a result, " '[a]n officer does not have to have personally observed a traffic violation * * * to justify detaining someone; rather, an officer can rely on information transmitted to him through a dispatch[.]' " *Gartrell* at ¶ 54, quoting

*Steinbrunner*, 2012-Ohio-2358, at ¶ 15, citing *Weisner* at 297. As noted by the

Fourth District:

> **An informant's tip may provide officers with the reasonable suspicion necessary to conduct an investigative stop. *Abernathy*, 4th Dist. No. 07CA3160, 2008-Ohio-2949 at ¶ 26. Where the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. *Maumee*, 87 Ohio St.3d 295, 1999-Ohio-68, at 299. The appropriate analysis then is whether the tip itself has sufficient indicia of reliability to justify the investigative stop. *Id.* Factors considered "highly relevant in determining the value of the [informant's] report" are the informant's veracity, reliability, and basis of knowledge. *Id.* (Citations omitted).**

*State v. George*, 4th Dist. Ross No. 12CA3351, 2013-Ohio-2511, ¶ 16. In *Maumee*,

the Ohio Supreme Court further explained that a tip from an identified citizen

informant, even though it does not determine the outcome of the case and is only

one element of the totality-of-the-circumstances review of the tip itself, weighs in

favor of the informant's reliability and veracity. *Maumee* at 302. In *Maumee*, the

Court concluded that the "informant was an identified citizen who based his

knowledge of the facts he described upon his own observations as the events

occurred. As a result, his tip merits a high degree of credibility and value, rendering

it sufficient to withstand the Fourth Amendment challenge without independent

police corroboration." *Id.*

{¶12} In this case, at the suppression hearing, the victim Ms. Newyear

testified that Shoaf's vehicle (a dark Nissan Rogue) hit, or side-swiped, her vehicle

on the driver's side while she was driving on Interstate 75 in the Findlay area. She stated that Shoaf did not stop. She then followed the Shoaf vehicle and her passenger immediately contacted the police. She also testified she followed the vehicle, never losing sight of it, until it was stopped by police.

{¶13} Trooper Gossard and Sergeant Kinney of the Ohio State Highway Patrol both testified that they responded to the call the Findlay Dispatch Center received about a hit-skip incident on Interstate 75 near mile post 156. The caller was from the victim's vehicle that was struck, following the other vehicle, and updating dispatch regarding their location the entire way. Plus, dispatch provided the suspect vehicle's description and license plate number. Hardin County Sheriff's Deputies were called to assist, and located the suspect's vehicle and stopped it, as well as the victim's vehicle stopped.

{¶14} The trial court was in the best position to determine Ms. Newyear's credibility; our role is to determine whether sufficient facts are in the record to support the trial court's conclusions. *State v. Moiduddin*, 3d Dist. Union No. 14-18-15, 2019-Ohio-3544, ¶ 9. Based upon the totality of the circumstances and given that the deputies, state trooper and sergeant relied on the dispatch from the identified informant and the subsequent information to perform the investigative traffic stop of Shoaf's vehicle, we conclude that the trial court properly overruled Shoaf's

motion to suppress. The State's evidence satisfies the burden of establishing the stop's constitutionality.

{¶15} We also do not agree that that the trial court's ruling on the suppression motion was against the manifest weight of the evidence. "When a defendant raises a manifest-weight argument, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Coppage*, 2d Dist. Montgomery No. 19404, 2003-Ohio-2076, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52.

{¶16} Shoaf's argument rests upon an implication that the trial court should not have believed Ms. Newyear's testimony. In particular, Shoaf challenges Ms. Newyear's testimony based on the contrary or conflicting testimony of Shoaf and her daughter Rhesa that there was no accident. We note the trial court heard Ms. Newyear's testimony about some crucial facts with regard to the accident on which her passenger's call to dispatch was made and nothing about Ms. Newyear's testimony is so incredible. In light of this testimony, we cannot find that the trial court's denial of the motion to suppress was against the manifest weight of the evidence.

{¶17} Based on the foregoing, Shoaf's first assignment of error is overruled.

*Second Assignment of Error*

**{¶18}** Shoaf makes two arguments under her second assignment of error. She argues that the jury's verdict of guilty of leaving the scene of an accident and of OVI were against the manifest weight of the evidence. She also argues that the trial court's conviction of committing a marked lane violation was against the manifest weight of the evidence.

Standard of Review

**{¶19}** Again, an appellate court applies the same manifest weight standard of review. In determining whether a conviction is against the manifest weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and examines the conflicting testimony. *State v. Henson*, 3d Dist. Marion No. 9-19-75, 2020-Ohio-4019, at ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. We review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts of evidence, the factfinder " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*

**{¶20}** However, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *Id.,* citing *State v.*

*DeHass*, 10 Ohio St.2d 230, 231 (1967).  Further, an appellate court will overturn a conviction as being against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction.  *Id.*

Controlling Statutes

**{¶21}** Shoaf was convicted of leaving the scene of an accident in violation of R.C. 4549.02, OVI in violation of R.C. 4511.19(A)(1)(a), and a marked lane violation in violation of R.C. 4511.33.

**{¶22}** "[R.C. 4549.02(A)(1)]   In the case of a motor vehicle accident or collision with persons or property on a public road or highway, the operator of the motor vehicle, having knowledge of the accident or collision, immediately shall stop the operator's motor vehicle at the scene of the accident or collision.  The operator shall remain at the scene of the accident or collision until the operator has given the operator's name and address * * * to all of the following:  (a) Any person injured in the accident or collision; (b) The operator, occupant, owner, or attendant of any motor vehicle damaged in the accident or collision; (c) The police officer at the scene of the accident or collision."

**{¶23}** "[R.C. 4511.19(A)(1)(a)] No person shall operate any vehicle * * * [while] under the influence of alcohol[.]"

**{¶24}** "[R.C. 4511.33(A)(1)] Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal

corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply: (1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."

Analysis

**{¶25}** Shoaf asserts in support of her contentions regarding manifest weight of the evidence that both she and her daughter testified that there was not an accident and that there was no evidence that she ever left her lane of the highway.

**{¶26}** As part of its case-in-chief, the State produced the testimony of Hardin County Sheriff's Deputies Christopher Fannon and Luke Heilman, Ms. Newyear, and Trooper Gossard and Sergeant Kinney of the Ohio State Highway Patrol.

**{¶27}** The trial testimony largely echoed that of the suppression hearing testimony regarding the traffic stop in this case. Trooper Gossard and Sergeant Kinney responded to the dispatch on August 23, 2020 regarding a hit-skip accident that occurred on I-75 in Hancock County at mile post 156 and that the at-fault vehicle was not stopping. Dispatch also reported the caller was following the vehicle with continual updating of the vehicles' location to them as they proceeded to catch up to the vehicles. The Hancock County Sheriff's deputies assisted in

stopping the reported vehicle in Hardin County, with the other vehicle following behind and the deputies being flagged down.

**{¶28}** Ms. Newyear testified that she was driving in the middle lane on Interstate 75 when Shoaf's vehicle hit the whole driver's side of her vehicle, causing her driver's side mirror to close in. She testified that she was driving straight when Shoaf's vehicle came into her lane. Ms. Newyear testified Shoaf first did pull over when she motioned her, then took off again, so she followed Shoaf's vehicle and her passenger called 911. She testified that she never lost sight of the vehicle she was following, a dark-colored Nissan, until it was stopped, and she described the damage to her vehicle starting from a dent at the front wheel well "but then even all along * * * the hub cap area was all dark and it went all the way to the very back of my car. It was the whole entire side of my car." (Tr. at 77-78).

**{¶29}** During the stop, Sergeant Kinney observed the damage along the entire driver's side of Ms. Newyear's light-colored sedan--a dent in the front fender, some fresh scratches and scuffs, paint transfer, and some black marks which would be tire transfer on the vehicle--and the same type of fresh damage on Shoaf's passenger side from front to back--scratches, paint transfer, some scuffs, and also some black tire marks. According to Sergeant Kinney, the damages are consistent with Ms. Newyear's account of the accident in which the vehicle driving in the left-hand lane came into the middle lane of traffic. Both deputies also observed the

damage which Deputy Fannon stated appeared to be fresh on the passenger side of Shoaf's vehicle. Deputy Heilman was wearing a body cam at that time, and the State introduced into evidence the video footage showing them observing the damage on the vehicles. The jury watched the deputy's body cam video, which corroborated Ms. Newyear's testimony about the damage from the accident.

{¶30} When Trooper Gossard asked Shoaf if she was involved in an accident, she denied being in an accident. The trooper asked Shoaf to exit her vehicle so that he could show the damage to her vehicle. The trooper asked Shoaf about whether she had prior damage to the vehicle and she replied "no." (Tr. at 105).

{¶31} The defense provided the testimony of Shoaf and her teenage daughter, who was a passenger in her vehicle. Both maintain that no accident had taken place on August 23rd. According to Shoaf, "everything was normal," and she "had gotten through the construction area." (Tr. at 171). "There was a piece of rubber in like the middle of the white lines so I would say the fast lane and middle lane there was a piece of rubber so I kind of went around it but I never left my lane." (*Id.*) She further testified—"The next thing I know, like I said or like my daughter testified, we were listening to music and talking amongst ourselves, everything was fine. Next thing I know I am getting pulled over when I got off onto 68 in Kenton." (*Id.*) In addition, Shoaf testified that Defendant's Exhibit A, a photo of her vehicle,

was taken the following morning which she claims showed there were no "scrapes and dents and scratches along my car." (Tr. at 172).

**{¶32}** Despite the testimony in Shoaf's defense, we note that there was contradictory evidence and testimony presented about what occurred. The jury heard testimony from the victim and the responding officers who indicated that there was damage to both vehicles indicative of the fact that they had recently been in an accident with one another. Additionally, while the jury viewed the photo that Shoaf allegedly took on the day following the accident, the jury also viewed the body cam footage documenting the damage on Shoaf's vehicle. Further, the prosecution presented, as rebuttal testimony, testimony from Trooper Gossard that the photo was "not an accurate depiction of the vehicle at the scene." (Tr. at 184).

**{¶33}** Although there are conflicts in the testimony presented at trial, such conflicting testimony, in and of itself, does not demonstrate that a conviction was against the manifest weight of the evidence. As this Court has stated, we will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of the events over another version. *State v. Anders*, 3d Dist. Hancock No. 5-16-27, 2017-Ohio-2589, ¶ 57. Having reviewed the entire record, weighed the evidence and all reasonable inferences, and examined the credibility of witnesses, we cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice in choosing

the State's version of events. Accordingly, under the circumstances, Shoaf has not demonstrated that her conviction for leaving the scene of an accident (hit/skip) is against the manifest weight of the evidence. Further, as it pertains to the marked lane violation, we do not find that Shoaf's conviction is against the manifest weight of the evidence.

{¶34} Shoaf further argues in support of her manifest weight of the evidence contentions that there was "no proof that her blood alcohol level was over the legal limit and no evidence showing her impairment." (Appellant's Brief at 13). Shoaf's argument is that she was having a diabetic episode when the police arrived on the scene and how it would affect the field sobriety tests, or the fact of being "legally blind," were not taken into account when the tests were performed. The argument is also that no additional tests were performed, beyond her two failed attempts to perform a breathalyzer, to demonstrate the level of blood alcohol in her system.

{¶35} Shoaf herself testified that when the police pulled her over, she explained her medical condition. Specifically, she testified that, "So I did test my sugar. The officer asked if I was okay and I said yes I thought, so. And I showed him my sugar and said it was quite high, about 250." (Tr. at 171). Aside from this fact, Shoaf did elaborate upon how it affects her, "He got me out of the vehicle, did a field sobriety test, but my vision at that point was a little off and most of the time when my sugar is very high I am very off kilter, off balance." (*Id.*). She admitted

-16-

to having one margarita at dinner and she later clarified that she had "one margarita that was about that big and maybe two actual sips of another one." (Tr. at 170, 177). Shoaf further testified that she is legally blind in her left eye. She explained that "if my hand was in front of me I was seeing double or triple, there wasn't a straight line of vision[.]" (Tr. at 172).

{¶36} Shoaf's daughter also testified about when her mother's sugar gets high and stated that her vision can go blurry, her words can be slurred and she can sometimes be off balance. Her daughter testified that she was not sure if her mother was having any issues relating to her diabetes on the day of the stop, but "[a]ll I know is I believe her sugar was high because she had to put her glasses on." (Tr. at 160).

{¶37} The State points to our opinion in *State v. Risner*, 3d Dist. Seneca No. 13-19-03, 2019-Ohio-4120, in arguing there, as here, it is a credibility evaluation and not the exceptional case where the evidence weighs heavily against the conviction. The relevant part of this Court's opinion states as follows:

> **Contrary to Risner's arguments, the State presented evidence of [Risner's] impairment through Trooper Fowler's testimony and through the dash camera video wherein her divided attention tests could be observed. In addition to this, the jury was able to see Risner and evaluate her credibility as to whether they believed she only had some "sips" of alcohol, and whether any purported medical condition she claimed to have would have impacted her on the field sobriety tests. Moreover, through the video the jury was able to observe Risner's performance on the divided attention tests, and the jury could hear her voice. The jury was also able to**

> **evaluate the credibility of Trooper Fowler's testimony regarding the odor of an alcoholic beverage and Risner's bloodshot, glassy eyes. Credibility is a matter soundly within the determination of the jury, and we must give deference to the jury's determination.** *State v. DeHass*, **10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).**

*Risner* at ¶ 36.

**{¶38}** The State thus argues that the jury here was also able to determine whether they believed "any purported medical condition she claimed to have would have impacted her on the field sobriety tests." (Appellee's Brief at 16).

**{¶39}** At Shoaf's trial, Deputy Fannon testified that during his initial contact with Shoaf, she told him "she was having a diabetic issue." (Tr. at 25). The jury also heard testimony that Trooper Gossard arrived on the scene shortly thereafter. When Trooper Gossard approached Shoaf's vehicle and spoke with her, she advised him that she thought her blood sugar is high. He asked her if she needed an ambulance and she replied, "no." (Tr. at 105). While speaking to Shoaf about her vehicle, Trooper Gossard detected an odor of alcohol emitting from within the vehicle and also observed that her face was flushed, her cheeks were kind of red, and her speech was slurred. Deputy Heilman could also smell the odor of an alcoholic beverage coming from the vehicle.

**{¶40}** During the trooper's investigation, Shoaf said that she had consumed 1 – ½ margaritas. Trooper Gossard recalled Shoaf again mentioning her blood sugar issue and that she advised the same reply "no" when asked if she wanted an

ambulance. (Tr. at 149). Trooper Gossard asked Shoaf to perform field sobriety tests, to which Shoaf consented. Trooper Gossard then conducted a Horizontal Gaze Nystagmus Test ("HGN"), noting Shoaf said she was legally blind in her left eye but would try to follow his stimulus. Trooper Gossard testified that he "made an effort to make sure that her left eye was tracking [his] stimulus correctly and it was." (Tr. at 110). Trooper Gossard testified in detail about the test, "Nystagmus is an involuntary jerking of the eye and when somebody is on a depressant such as alcohol, their eyes, the muscles around their eyes will relax to the point when their eyes are moving that they will involuntary[ily] bounce." (Tr. at 109). With respect to the HGN test, Trooper Gossard testified that he observed six out of six possible clues of impairment, or three in each eye.

{¶41} Trooper Gossard also had Shoaf perform walk-and-turn and one-leg stand tests. On the walk-and-turn test, Trooper Gossard observed six out of eight possible clues, with two clues indicating possible impairment. With respect to the one-leg stand test, Trooper Gossard testified Shoaf could not hold her foot approximately six inches off the ground for more than a few seconds at a time and was ultimately marked down as "could not do" because of his concern that Shoaf was going to fall over based on her attempts. (Tr. at 115). After conducting these tests, Trooper Gossard, based on his training and experience and the observed signs of impairment, believed that Shoaf was under the influence of alcohol. Through his

training and experience, Trooper Gossard further testified that "we have never been trained that a high blood sugar is going to show nystagmus in your eye, so one of the tests that we rely most heavily on is the one that is 88 percent accurate, which is the Horizontal Gaze Nystagmus Test[.]" (Tr. at 117). Following the field sobriety tests, Trooper Gossard then arrested Shoaf for OVI. Shoaf's performance on two of the field sobriety tests—the walk-and-turn and the one-leg stand tests—was recorded on Deputy Heilman's body-cam, which was played for the jury.

{¶42} After arresting Shoaf, Trooper Gossard then transported her to the Kenton Police Department. Trooper Gossard made two attempts to have Shoaf blow into a breathalyzer machine, and she provided an insufficient breath sample on the first attempt and an invalid sample reading the second time. According to Trooper Gossard, Shoaf was ultimately marked down as refusing to take the breathalyzer test because he believed that she was trying to sabotage the test.

{¶43} In addition, while Shoaf is correct that no additional tests were performed to determine the level of alcohol in her system, we observe that she was charged with OVI under R.C. 4511.19(A)(1)(a), which requires evidence that the driver is under the influence of alcohol or drug of abuse. *See State v. Henderson*, 5th Dist. Stark No. 2004-CA-00215, 2005-Ohio-1644, ¶ 32. The jury was free to rely on the accident, the testimony from law enforcement of their observations of Shoaf at the scene, and the field sobriety tests, and we cannot find that the jury

clearly lost its way here and created a manifest miscarriage of justice in reaching the conclusion that Shoaf was under the influence of alcohol. Accordingly, Shoaf's conviction for OVI is not against the manifest weight of the evidence.

*Third Assignment of Error*

**{¶44}** In her third assignment of error, Shoaf asserts the trial court committed reversible error in denying her motion for a mistrial because the jury was shown video evidence of Shoaf taking a handheld breathalyzer test that would have improperly influenced the jury.

*Analysis*

**{¶45}** At trial, Deputy Sheriff Heilman's body camera footage taken during the traffic stop of Shoaf was played for the jury. Defense counsel then requested a mistrial based on the fact that a portion of the video, which was played for the jury, showed Shoaf taking a handheld breathalyzer test. The trial court denied the motion, finding that brief clip was no more than three to four seconds.

**{¶46}** "Generally, when a motion for a mistrial is actually made, its denial is within the sound discretion of the trial court." *State v. Risner,* 3d Dist. Seneca No. 13-19-03, 2019-Ohio-4120, at ¶ 40, citing *State v. Garner*, 74 Ohio St.3d 49 (1995); *State v. Dodson*, 3d Dist. Seneca No. 13-10-47, 2012-Ohio-5576, ¶ 13. "Mistrials should only be granted in those situations in which a fair trial becomes impossible." *Id.* citing *State v. Franklin*, 62 Ohio St.3d 118 (1991).

{¶47} In this case, there was no more than a brief reference of the police body-cam footage showing Shoaf taking a handheld or portable breathalyzer test, and other factors minimized any potential prejudice resulting from it being viewed by the jury. The jury never heard testimony from any witness regarding the portable breath test or the results thereof. The trial court then gave a cautionary instruction concerning the video after the evidence was closed and before the case went to the jury. Therefore, based on this record, we conclude the trial court did not abuse its discretion by denying the motion for mistrial. The third assignment of error is overruled.

*Fourth Assignment of Error*

{¶48} In support of the fourth assignment of error, Shoaf asserts that she received ineffective assistance of trial counsel for the following reasons: (1) counsel failed to provide a medical expert as it related to Shoaf's diabetes and blindness in her one eye; (2) counsel failed to object to the State Trooper testifying to the results of Shoaf's diabetes and the field sobriety tests; (3) counsel failed to move for acquittal of the OVI charge at the time of the Crim.R. 29 motion and failed to renew the motion for acquittal at the close of defense evidence; (4) counsel failed to argue the OVI charge in closing arguments; (5) counsel failed to object to prosecutorial misconduct when the prosecutor, in closing, included facts not in evidence; (6) counsel failed to move to suppress and/or object to the field sobriety

tests; and (7) counsel failed to move to suppress and/or object to Shoaf's statements to the police after she was in police custody and not mirandized.

*Legal Analysis*

**{¶49}** To establish an ineffective assistance of counsel claim, Shoaf must show both deficient performance, that her defense counsel's performance fell below an objective standard of reasonable representation, and prejudice. *State v. Blackburn*, 3d Dist. Logan No. 8-21-25, 2022-Ohio-988, ¶ 18-19. Although the issue of ineffective assistance of counsel is a two-pronged analysis, the appellate court does not need to consider the facts of the case under both prongs if the appellant makes an insufficient showing on one. *State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 18, citing *State v. Baker*, 3d Dist. Allen No. 1-17-61, 2018-Ohio-3431, ¶ 19, citing *State v. Walker*, 3d Dist. Seneca No. 13-15-42, 2016-Ohio-3499, ¶ 20.

**{¶50}** " 'To show prejudice, the [appellant] must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.' " *State v. Moll*, 3d Dist. Defiance No. 4-19-17, 2020-Ohio-2784, ¶ 4, quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 95. Moreover, when considering the deficient performance part of an ineffectiveness claim inquiry, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Ball*, 3d Dist. Allen No.

1-21-16, 2022-Ohio-1549, ¶ 46. Thus, the appellant must overcome the strong presumption that, under the circumstances, counsel's performance was adequate or that counsel's actions might be considered sound trial strategy. *State v. Artis*, 3d Dist. Logan No. 8-18-40, 2019-Ohio-2070, ¶ 31, citing *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 180. As this Court has recognized in reviewing claims of ineffective assistance, tactical or strategic trial decisions, even if ultimately unsuccessful, will not substantiate a claim of ineffective assistance of counsel. *State v. Hines*, 3d Dist. Marion No. 9-05-13, 2005-Ohio-6696, ¶ 38. We further note that counsel's failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel. *Conway* at ¶ 103.

**{¶51}** Shoaf first argues that her trial counsel's failure to present medical expert testimony as to Shoaf's diabetes and blindness in one eye constitutes ineffective assistance. Shoaf also argues her trial counsel was ineffective for failing to object to Trooper Gossard's testimony "as to his training as to diabetes and field sobriety tests." (Appellant's Brief at 17). We note initially that " '[a] decision by trial counsel not to call an expert witness generally will not sustain a claim of ineffective assistance of counsel.' " *State v. Wilson*, 3d Dist. Allen No. 1-20-46, 2022-Ohio-504, ¶ 134, quoting *Conway* at ¶ 118. This Court also pointed out in *Wilson* that "[i]n fact, in many criminal cases trial counsel's decision not to seek expert testimony 'is unquestionably tactical because such an expert might uncover

evidence that further inculpates the defendant.' " *Id.,* quoting *State v. Glover*, 12th Dist. Clermont No. CA2001-12-102, 2002-Ohio-6392, at ¶ 95. Further, as noted, even if the decision may be debatable, a debatable trial strategy decision does not constitute ineffective assistance of counsel. *Id.*

{¶52} Based on the record in this case, it appears trial counsel made a strategic decision under the circumstances of this case to focus on the issues through lay testimony. As previously mentioned, Shoaf said that she was having high blood sugar when she was stopped, but she told Trooper Gossard after he arrived and spoke with her she did not want an ambulance called at that time and also several times later when he asked her during the field sobriety tests. The State's questioning on direct was limited to what Trooper Gossard knew based on his training and experience using field sobriety tests, including HGN tests, and, in fact, Shoaf never indicated any unwillingness to perform the tests because of her medical conditions at the time. Then, on cross-examination on the subject, Trooper Gossard admitted that his training in field sobriety tests was designed to detect impairment from alcohol rather than diabetes. Further, trial counsel and the prosecutor did not ask Shoaf complex medical questions, but rather asked Shoaf and her daughter about Shoaf's symptoms when her blood sugar is high. Accordingly, Shoaf fails to demonstrate ineffective assistance here as she does not demonstrate a reasonable probability of a different outcome of her trial.

{¶53} Shoaf next argues ineffective assistance of trial counsel based on counsel's failure to include the OVI charge in the Crim.R. 29 motion for acquittal or argue it in closing argument, and also to renew the Crim.R. 29 motion at the close of the defense evidence.

{¶54} We note trial counsel made a Crim.R. 29 motion for acquittal at the close of the State's case in chief with respect to the marked lane and leaving the scene of an accident violations. The motion was denied. At the conclusion of all the testimony, trial counsel did not renew the Crim.R. 29 motion.

{¶55} The standard applied by a trial court determining a Crim.R. 29 motion is set forth in *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), syllabus: "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." In reviewing claims of ineffective assistance, including a claim that failure to make a Rule 29 motion for acquittal constituted ineffective assistance, we note this Court's decision in *State v. Hines*, 3d Dist. Marion No. 9-05-13, 2005-Ohio-6696, at ¶ 38, in which we concluded upon review of the trial court record that: "the evidence [of the] case regarding the claims of ineffective assistance of counsel revealed tactical or strategic trial decisions. As such, they do not fall below an objective standard of reasonable representation."

**{¶56}** Upon review, even though it appears that trial counsel's choices in the present case can be considered as a matter of trial tactics or strategy, we find the evidence produced by the prosecution would have passed a Crim.R. 29 challenge. Further, we note that a "prominent" part of trial counsel's closing argument was on the issue of the accident, as the jury heard conflicting testimony on this issue, and that the video was helpful to the defense's case. Counsel concluded his argument by asking the jury to "watch the video" and by stating: "And when you are finished I am confident that you will find Anna Shoaf not guilty of these charges." (Tr. at 199). Consequently, the record in this case does not support these particular allegations of ineffective assistance of trial counsel.

**{¶57}** Shoaf next argues that trial counsel was ineffective for failing to object to two instances of alleged prosecutorial misconduct during the prosecution's closing argument. " 'The test for prosecutorial misconduct during * * * closing arguments is whether the remarks made by the prosecutor were improper and, if so, whether they prejudicially affected a substantial right of the accused.' " *State v. Potts*, 3d Dist. Hancock No. 5-16-03, 2016-Ohio-5555, ¶ 82, quoting *State v. Siefer*, 3d Dist. Hancock No. 5-09-24, 2011-Ohio-1868, ¶ 46, citing *State v. White*, 82 Ohio St.3d 16, 22 (1998). " 'In closing arguments, prosecutors are entitled to some latitude regarding what the evidence has shown and the inferences that can be drawn.' " *Id.,* quoting *State v. McGuire*, 3d Dist. Allen No. 1-13-47, 2015-Ohio-

1887, ¶ 81, citing *State v. Ballew*, 76 Ohio St.3d 244, 255 (1996). However, a prosecutor cannot go beyond the evidence which is before the jury when arguing for a conviction. *Id.* Additionally, to establish prejudice, an appellant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different. *State v. Liles*, 3d Dist. Allen No. 1-14-61, 2015-Ohio-3093, ¶ 31.

{¶58} The first instance of alleged misconduct occurred when the prosecutor argued to the jury that Shoaf "is around people who have been under the influence. She's around attorneys who have tried these kinds of cases. She has heard someone say oh you mentioned you have diabetes, you can get off." (Tr. at 190). There was some evidence in the record that Shoaf was currently working at a high-end steakhouse and a country club. However, there was no evidence that Shoaf ever heard any such comments, met any such customers or attorneys, or had any such conversations, during such employment. As such, the prosecution's statements, essentially urging the jurors to presume the existence and content of such conversations, based solely on the fact of her employment at those locations, was improper and constituted error.

{¶59} The second instance of alleged prosecutorial misconduct occurred when the prosecutor argued to the jury "you heard the Trooper testify as to why he did all the field sobriety tests he did." (Tr. at 191). The prosecutor continued: "He

did all of them to rule out diabetes. He did it to say yes we were right, that could be something that I should be concerned about and how can I assist you if there is a medical condition, you don't want me to call an ambulance, okay, now I've got another job because when I talk to you about this accident I am smelling alcohol. Now I am going to run you through the H.G.N., Horizontal Gaze Nystagmus. That is not affected by diabetes. You heard that testimony." (*Id.*). While Trooper Gossard did testify that through his training and experience he has never been told that high blood sugar is going to make a person have nystagmus, the prosecutor's suggestion that the field sobriety tests in this case were conducted to rule out diabetes, exceeded the limits of acceptable argument based on the trooper's testimony, which was that he had received training on field sobriety tests designed to detect alcohol impairment in drivers, and that he had not received any instruction on the effects of diabetes on those tests.

{¶60} In sum, we acknowledge prosecutorial error in both of these instances. However, we cannot find that the misconduct was so prejudicial that Shoaf was deprived of a fair trial in the context of the entire record and in light of the trial court's instruction to the jury that "[t]he evidence does not include * * * the opening statements or closing arguments" of either attorney (Jury Charge at 8).

{¶61} Finally, Shoaf argues that her trial counsel was ineffective because he failed to move to suppress and/or object to the admission of the field sobriety tests

-29-

and also to suppress and/or object to her statements about consuming alcohol on the ground that she was in police custody and not mirandized.

**{¶62}** Contrary to Shoaf's argument, trial counsel did file motions to suppress the evidence obtained as a result of the traffic stop, including "tests designed to ascertain Defendant's possible impairment from alcohol or drugs of abuse" and "statements or assertive conduct made by Defendant in response to questioning," and the trial court denied the motions. (Doc. No. 16 Case No. 20TRC04154; Doc. No. 10 Case No. 20CRB01177). Moreover, in reviewing an ineffective assistance claim for failure to file a motion to suppress, this Court recently noted that " 'the failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful if made.' " *State v. Line*, 3d Dist. Allen No. 1-19-07, 2019-Ohio-4221, ¶ 10, quoting *State v. Walker*, 3d Dist. Seneca No. 13-15-42, 2016-Ohio-3499, ¶ 23, quoting *State v. Brown*, 12th Dist. Warren No. CA2002-03-026, 2002-Ohio-5455, ¶ 11.

**{¶63}** It is well-established that a police officer may not request a motorist to perform field sobriety tests unless that request is based on a reasonable, articulable suspicion that the person was driving under the influence of alcohol or drugs. *See State v. Angers*, 3d Dist. Auglaize No. 2-21-04, 2021-Ohio-3640, ¶ 26. The totality of the circumstances is considered when analyzing the reasonableness

of the request, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. *State v. Null*, 3d Dist. Logan No. 8-19-50, 2020-Ohio-3222, ¶ 18.

**{¶64}** Here, in light of the detailed record before us, Shoaf cannot show that a motion to suppress concerning whether there was reasonable suspicion to conduct the field sobriety tests would have been granted had it been filed, and she thus fails to make the necessary showing to establish ineffective assistance of counsel. As such, given the totality of the circumstances beyond Shoaf's traffic violations, trial counsel's failure to object to in-court testimony does not amount to ineffective assistance. Also, to the extent Shoaf attempts to assert ineffective assistance based on trial counsel's failure to use the National Highway Traffic Safety Administration (NHTSA) manual to question Trooper Gossard, we note that the parties first stipulated at trial to the trooper's NHTSA training and certification with respect to administering field sobriety tests and that he then testified about the tests he administered and how he evaluated the results of each of the standardized tests administered to Shoaf in accordance with his training and the NHTSA standards for conducting field sobriety tests.

**{¶65}** In addition, from a review of the record, we find that Shoaf has not established ineffective assistance of counsel for failure to challenge her statements about consuming alcohol. The facts indicate that Trooper Gossard's questions about

Shoaf's consumption of alcohol and her statements were made prior to being arrested and placed in custody. During the traffic stop, Trooper Gossard asked Shoaf to come and sit in the front seat of his patrol car while he asked her questions about the crash and attempted to get a statement, and also asked her questions about her consumption of alcohol. According to Trooper Gossard's testimony, Shoaf had originally stated during the traffic stop that she had consumed one margarita, but later while seated in the patrol car she stated that she had 1 – ½ margaritas. She was not handcuffed, nor under arrest at that time. As this Court has previously held, a person is not in custody when they are patted down and placed in the back seat of a patrol car for safety purposes. *State v. Heimberger*, 3d Dist. Marion No. 9-17-45, 2018-Ohio-3001, ¶ 19. The person was not handcuffed and was not under arrest. *Id.* Similarly, in a case more closely aligned factually with this one, the Seventh Appellate District concluded that a person is not in custody for purposes of *Miranda* when the questioning regarding consumption of alcohol occurred during an ordinary traffic stop. *State v. Leffler*, 7th Dist. Columbiana No. 18 CO 0032, 2019-Ohio-3964, ¶ 27. Further, in that case, although the person had been patted down and was seated in the backseat of a cruiser when a second questioning occurred regarding consumption of alcohol, the person was not handcuffed at that point and no statement was obtained in violation of *Miranda. Id.* at ¶ 29, 32.

**{¶66}** Accordingly, for all the foregoing reasons, Shoaf's fourth assignment of error is overruled. The judgments of the Findlay Municipal Court, Hancock County, appealed from are affirmed.

***Judgments Affirmed***

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**